Docket No. 82155–Agenda 8–November 1997.

GAIL P. HARINEK, Appellee, v. 161 NORTH CLARK STREET LTD. PARTNERSHIP 
et al.
 (The City of Chicago, Appellant).

Opinion filed February 20, 1998.

JUSTICE HEIPLE delivered the opinion of the court:

The City of Chicago appeals a judgment of the appellate court reversing the circuit court of Cook County's dismissal of count II of plaintiff Gail P. Harinek's second-amended complaint. In addition, plaintiff seeks cross-relief reversing the appellate court's affirmance of the trial court's dismissal of count III of the complaint. The appellate court concluded that count II was sufficient to allow plaintiff to maintain an action against the City for alleged negligence in planning and conducting a fire drill, but that count III failed adequately to allege that the City's conduct was willful and wanton. For the reasons that follow, we hold that the complaint is insufficient to support either of these claims.

BACKGROUND

Count I of the complaint alleged that defendant 161 North Clark Street Ltd. Partnership (the Partnership) owned and operated an office building in which plaintiff worked. Count I further alleged that the Partnership negligently allowed a heavy door with no window to be constructed near an elevator corridor and failed to provide adequate warnings as to the dangerous condition of the door. The count alleged that as result of this conduct, plaintiff was hit and injured by the door during a fire drill.

Count II alleged that the City of Chicago's fire marshal personally planned and conducted a fire drill in the building on April 28, 1993. Count II further alleged that, during the fire drill, the marshal negligently directed a large group of people, including plaintiff, to stand in the vicinity of the door, and that as a result, plaintiff was hit and injured by the door when someone opened it without warning. The count also alleged that the marshall was negligent in failing to inspect the door to ascertain whether it was safe, failing to warn those passing through and standing by the door of its danger, and failing to establish alternate routes not involving the door for use during the fire drill.

Count III repeated the factual allegations of count II, but asserted further that the fire marshal's conduct was willful and wanton because he was on notice that the area in which he directed the group of people to stand was unsuitable for that purpose.

Both the Partnership and the City moved to dismiss the complaint under section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 1994)). The circuit court denied the Partnership's motion to dismiss count I, but granted the City's motion to dismiss counts II and III based on the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (745 ILCS 10/2–101 (West 1994)). The court also found that there was no just cause to delay enforcement or appeal of its order dismissing counts II and III (see 134 Ill. 2d R. 304(a)).

The appellate court reversed the circuit court's dismissal of count II, ruling that the Act does not immunize the City from liability for the fire marshal's conduct as described in the complaint. 283 Ill. App. 3d 491. The court first held that sections 5–102 and 5–103(b) of the Act (745 ILCS 10/5–102, 5–103(b) (West 1994)) are inapplicable because these sections pertain only to firefighters' performance in fighting a fire or to the City's failure to provide adequate personnel, equipment, or facilities for fire protection.
(footnote: 1) 283 Ill. App. 3d at 494-95. The court also held that section 2–201 of the Act (745 ILCS 10/2–201 (West 1994)) does not preclude liability because the fire marshal's conduct in “directing plaintiff to stand behind a door, though discretionary, is not a policy determination within the meaning of the Act.” 283 Ill. App. 3d at 496. The court affirmed, however, the trial court's dismissal of count III, holding that plaintiff's injury was not the result of willful and wanton conduct on the part of the fire marshal. 283 Ill. App. 3d at 497. This court allowed the City's petition for leave to appeal (166 Ill. 2d R. 315(a)).

ANALYSIS

Discretionary Acts

The City contends that permitting it to be held liable for the injuries plaintiff sustained during the fire drill would violate sections 2–109 and 2–201 of the Tort Immunity Act (745 ILCS 10/2–109, 2–201 (West 1994)). These sections provide as follows:

“A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable.” 745 ILCS 10/2–109 (West 1994).

“Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.” 745 ILCS 10/2–201 (West 1994).

The Illinois Constitution of 1970 abolished sovereign immunity in Illinois, except as the General Assembly may provide by law. Ill. Const. 1970, art. XIII, §4. Consequently, the Tort Immunity Act governs whether and in what situations local governmental units are immune from civil liability. 
Epstein v. Chicago Board of Education
, 178 Ill. 2d 370, 375 (1997). In construing the Act, our primary goal is to ascertain and give effect to the intention of the legislature. 
Barnett v. Zion Park District
, 171 Ill. 2d 378, 388 (1996). We will not depart from the plain language of the Act by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. 
Barnett
, 171 Ill. 2d at 389.

The City argues that sections 2–109 and 2–201 of the Act immunize a local public entity from liability if its act or omission which allegedly caused a plaintiff's injury constituted an exercise of discretion. The City asserts that the appellate court erred in requiring that the act or omission also had been a policy determination. The City contends that, prior to the instant case, no court had construed section 2–201 as requiring that a public entity's act or omission had been both an exercise of discretion 
and
 a policy determination. The City also argues that even if the statute is construed to require that the act or omission had been a policy determination, the fire marshal's conduct as described in the complaint satisfies this requirement.

Plaintiff responds that the clear language of the statute provides immunity only when the public entity's act or omission was both an exercise of discretion and a policy determination. Plaintiff argues that these two characteristics of a public entity's conduct are separate and distinct, and must both be satisfied independently for immunity to attach. Plaintiff contends further that the appellate court correctly determined that the fire marshal's conduct in this case did not constitute a policy determination, but asserts that the court erred in holding that the marshal's conduct was discretionary.

This court has not previously addressed the issue of whether section 2–201 requires that a public entity's act or omission be both an exercise of discretion and a policy determination. By its plain language, the statute immunizes a public employee who serves in “a position involving the determination of policy or the exercise of discretion” from liability for injuries allegedly caused by the employee's “act or omission in determining policy when acting in the exercise of such discretion.” 745 ILCS 10/2–201 (West 1994). This language makes clear that the statute is concerned with both 
the type of position
 held by the employee and 
the type of action
 performed or omitted by the employee.

According to the statute, an employee may be granted immunity if he holds 
either
 a position involving the determination of policy 
or
 a position involving the exercise of discretion. The statute is equally clear, however, that immunity will not attach unless the plaintiff's injury results from an act performed or omitted by the employee in determining policy 
and
 in exercising discretion. The employee's position thus may be one which involves either determining policy or exercising discretion, but, as the appellate court correctly held, the act or omission must be both a determination of policy and an exercise of discretion.

In the instant case, plaintiff apparently concedes that the fire marshal's position involves either the determination of policy or the exercise of discretion. Plaintiff contends, however, that the appellate court correctly determined that the acts and omissions of the marshal described in the complaint were not determinations of policy. We disagree. The appellate court held that the fire marshal's act of “directing plaintiff to stand behind a door, though discretionary, is not a policy determination within the meaning of the Act.” 283 Ill. App. 3d at 496. In so holding, the appellate court mischaracterized the nature of the conduct described in the complaint.

The complaint alleges that the City of Chicago fire department “planned, controlled, operated, and implemented” a fire drill at plaintiff's place of employment on the date she was injured. The complaint further alleges that the fire marshal assembled plaintiff and her fellow employees in a corridor near the door which struck plaintiff, but that the marshal failed to place any warnings on the door and failed to provide adequate alternate routes for use during the fire drill. The complaint also alleges that the assembling of plaintiff and her fellow employees in the corridor in the vicinity of the door was carried out pursuant to a plan developed by the marshal before the fire drill began.

We hold that these allegations describe acts and omissions of the fire marshal in determining fire department policy. This court has previously defined “policy decisions made by a municipality” as “those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests.” 
West v. Kirkham
, 147 Ill. 2d 1, 11 (1992). The conduct described in the instant complaint falls squarely within this definition. The fire marshal is responsible for planning and conducting fire drills in the City of Chicago. In planning these drills, the marshall must balance various interests which may compete for the time and resources of the department, including the interests of efficiency and safety. The alleged acts and omissions outlined in the complaint, such as the marshal's decisions regarding where to assemble the participants and whether to provide warning signs and alternate routing, were all part of his attempts to balance these interests. Accordingly, these acts and omissions were undertaken in determining policy within the meaning of the statute.

Plaintiff contends in the alternative that the appellate court erred in holding that the fire marshal's conduct was discretionary. In construing section 2–201 of the Act, this court has held that

“discretionary acts are those which are unique to a particular public office, while ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act.” 
Snyder v. Curran Township
, 167 Ill. 2d 466, 474 (1995).

Under these standards, the fire marshal's conduct described in the complaint clearly constituted an exercise of discretion. The marshal bears sole and final responsibility for planning and executing fire drills in buildings throughout Chicago. He is under no legal mandate to perform these duties in a prescribed manner; rather, he exercises his discretion in determining how, when, and where to hold drills such as the one in which plaintiff was injured. The appellate court was therefore correct in concluding that the fire marshal's conduct was discretionary.

Because the fire marshal occupied a position involving the determination of policy or the exercise of discretion, and because his conduct as described in the complaint constituted acts or omissions in determining policy and exercising discretion, section 2–201 of the Act immunizes the City from liability for plaintiff's injuries.

The “Special Duty” Doctrine

Plaintiff contends that even if the fire marshal's conduct is immunized by section 2–201 of the Act, the City may nevertheless be held liable because the marshal owed plaintiff a “special duty” to protect her from the injuries which she suffered. The City responds that when a public entity is found to be immunized from liability by the Act, courts are not authorized to make exceptions to the Act which would nevertheless permit the imposition of liability.

Under the doctrine of sovereign immunity, a governmental unit in Illinois was immune from tort liability. 
Barnett v. Zion Park District
, 171 Ill. 2d 378, 385 (1996). In 1959, however, this court abolished the sovereign immunity of municipal corporations in tort actions. 
Molitor v. Kaneland Community Unit District No. 302
, 18 Ill. 2d 11 (1959); see also 
Walker v. Forest Preserve District
, 27 Ill. 2d 538, 540 (1963) (holding that in 
Molitor
 “the sovereign immunity of municipal corporations in tort actions was abolished”). In response to 
Molitor
, the General Assembly in 1965 enacted the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1–101 
et seq
. (West 1994)). The Act adopted the general principle from 
Molitor
 that local governmental units are liable in tort, but limited this liability with an extensive list of immunities based on specific government functions. 
Burdinie v. Village of Glendale Heights
, 139 Ill. 2d 501, 506 (1990).

The ratification of the Illinois Constitution of 1970 validated both 
Molitor
 and the Tort Immunity Act. Article XIII, section 4, of the Illinois Constitution reads as follows: “Except as the General Assembly may provide by law, sovereign immunity in this State is abolished.” Ill. Const. 1970, art. XIII, §4. This provision embodies the presumptive rule from 
Molitor
 that units of local government are subject to tort liability, but “makes the General Assembly the ultimate authority” in determining whether such a unit is nevertheless immune from liability. 
Burdinie
, 139 Ill. 2d at 510. Therefore, governmental units are now liable in tort on the same basis as private tortfeasors unless a valid statute dealing with tort immunity imposes conditions upon that liability. 
Barnett
, 171 Ill. 2d at 386. Where such statutory conditions are found to exist, tort liability is precluded.

The “special duty” doctrine which plaintiff seeks to apply in the instant case originated as an exception to the common law “public duty” rule. According to the public duty rule, a municipality could not be held liable for its failure to provide adequate governmental services, such as police and fire protection. 
Huey v. Town of Cicero
, 41 Ill. 2d 361, 363 (1968). The rationale for this rule was that the duty of a municipality to provide governmental services was owed to the public at large and therefore took precedence over any duty owed to a particular plaintiff. See 
Calloway v. Kinkelaar, 
168 Ill. 2d 312, 334 (1995) (Freeman, J., specially concurring); 
Leone v. City of Chicago
, 156 Ill. 2d 33, 47 (1993) (Bilandic, J., dissenting); 
Gebhardt v. Village of LaGrange Park
, 354 Ill. 234, 237-38 (1933).

Despite abolishing common law sovereign immunity in 
Molitor
, this court has nevertheless retained the public duty rule. As the court explained in 
Huey
, the public duty rule exists “[i]ndependent of *** common-law concepts of sovereign immunity.” 
Huey
, 41 Ill. 2d at 363. Therefore, although, absent a statutory immunity, governmental units are now liable in tort on the same basis as private tortfeasors, the public duty rule nevertheless prevents such units from being held liable for their failure to provide adequate governmental services.

In 1966, the appellate court first recognized an exception to the public duty rule now known as the “special duty” doctrine. In 
Gardner v. Village of Chicago Ridge
, 71 Ill. App. 2d 373 (1966), the court held that, notwithstanding the public duty rule, police officers employed by a municipality could be held liable for their failure to protect a plaintiff from injury by others if the facts of the case showed that the officers undertook to exercise a particular duty of care or custody over the plaintiff. 
Gardner
, 71 Ill. App. 2d at 378. Subsequently, in 1968, this court acknowledged that an exception to the public duty rule exists where “the municipality was under a special duty to a particular individual.” 
Huey
, 41 Ill. 2d at 363.

Plaintiff in the instant case urges us to apply the special duty doctrine to override the immunity granted the City by the Tort Immunity Act. As this court emphasized in 
Huey
, however, the basis for the public duty rule is “[i]ndependent of statutory *** concepts of sovereign immunity.” 
Huey
, 41 Ill. 2d at 363. As we have more recently explained, “the existence of a duty and the existence of an immunity are separate issues.” 
Barnett
, 171 Ill. 2d at 388. Therefore, the question of whether the City owed plaintiff a duty under the special duty doctrine has no bearing on the separate question of whether the Act immunizes the City from liability for plaintiff's injuries.

As noted previously, article XIII, section 4, of the Illinois Constitution “makes the General Assembly the ultimate authority in determining whether a unit of local government is immune from tort liability.” 
Burdinie
, 139 Ill. 2d at 510. Thus, when a court finds, on the facts of a particular case, that the General Assembly has granted a public entity immunity from liability, the court may not then negate that statutory immunity by applying a common law exception to a common law rule. Doing so would violate not only the Illinois Constitution's provision governing sovereign immunity (Ill. Const. 1970, art. XIII, §4), but also the Constitution's separation of powers clause, which provides that no branch of government “shall exercise powers properly belonging to another.” Ill. Const. 1970, art. II, §1. The special duty doctrine simply allows courts to impose liability upon a municipality by making an exception to the public duty rule in cases in which the legislature has not granted immunity to the municipality. Thus, the special duty doctrine may not operate to impose liability upon a public entity after a court has found that entity immune from liability under the Tort Immunity Act. Previous holdings to the contrary by this court and the appellate court are hereby overruled.

In the instant case, because we find that the Act immunizes the City from liability for plaintiff's injuries, the question of whether the fire marshal had a special duty to plaintiff is irrelevant.

Willful and Wanton Conduct

Plaintiff also seeks cross-relief reversing the appellate court's holding that the fire marshal's alleged conduct was not willful and wanton. Even willful and wanton conduct, however, cannot deprive a municipality of an immunity granted by section 2–201 of the Act (745 ILCS 10/2–201 (West 1994)). 
In re Chicago Flood Litigation
, 176 Ill. 2d 179, 196 (1997). Because we find that the City is immune from liability under section 2–201, it is unnecessary for us to consider whether the fire marshal's alleged conduct was willful and wanton.

CONCLUSION

For the reasons stated, we reverse the appellate court's holding that count II of the complaint was sufficient to state a cause of action against the City, and affirm the circuit court's dismissal of that count. We also affirm the judgments of the appellate and circuit courts dismissing count III of the complaint.

Appellate court judgment affirmed in part

and reversed in part;

circuit court judgment affirmed.

JUSTICE BILANDIC, specially concurring:

I fully concur in the majority opinion, with one exception. The majority interprets section 2–201 of the Tort Immunity Act (745 ILCS 10/2–201 (West 1994)) as requiring an analysis of (1) the 
type of position
 held by the employee and (2) the 
type of action
 performed or omitted by the employee. Slip op. at 4-5. As to the second inquiry, the type of action involved, the majority holds that immunity will not attach unless the injury at issue resulted from an act performed or omitted by the employee in determining policy 
and 
in exercising discretion. Slip op. at 4. I disagree. I would hold that section 2–201 does not require that the act or omission satisfy the independent requirement of being a policy determination before immunity will attach.

As the majority concedes, this court has never before determined whether section 2–201 requires that a public entity's act or omission be both an exercise of discretion and a policy determination. Slip op. at 4. In my view, this is because the phrase “exercise of discretion” in section 2–201 has been readily understood by Illinois courts as
 encompassing
 policy determinations. In other words, the phrase “policy determination” in section 2–201 has not been understood as creating a separate and distinct element that must be satisfied independently for immunity to attach. See 
Epstein v. Chicago Board of Education
, 178 Ill. 2d 370, 381 (1997); 
In re Chicago Flood Litigation
, 176 Ill. 2d 179, 193-95 (1997); 
Snyder v. Curran Township
, 167 Ill. 2d 466 (1995); 
Mora v. State
, 68 Ill. 2d 223, 234 (1977).

Nor does the plain language of section 2–201 support the majority's holding. Section 2–201 provides in relevant part:

“[A] public employee serving in a position involving the determination of policy or the exercise of discretion is not liable
 for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion
 even though abused.” (Emphasis added.) 745 ILCS 10/2–201 (West 1994).

The majority's interpretation of this language limits immunity to injuries resulting from policy decisions. This interpretation renders section 2–201's reference to the “exercise of such discretion” mere surplusage, because policy decisions are always discretionary. In my view, if the legislature had intended to immunize only injuries resulting from policy decisions, it would have written a shorter provision plainly stating this intent. The General Assembly, however, conferred immunity on employees who are “serving in a position involving the determination of policy or the exercise of discretion.” Additionally the General Assembly provided immunity for any “act or omission in determining policy 
when
 acting in the exercise of 
such
 discretion.” (Emphasis added.) This language equates “determining policy” with the actual “exercise of such discretion.” The use of the modifier term “such” makes clear that the General Assembly did not consider “determining policy” to be separate and distinct from what constitutes an exercise of discretion. Therefore, the language of section 2–201, when considered as a whole, manifests the General Assembly's intent to immunize all injuries resulting when certain public employees exercise their discretion.

The majority's interpretation of section 2–201 creates a new distinction between policy determinations and other discretionary decisions and requires that both features be present before immunity will attach. I disagree with this interpretation, for the reasons stated. Nonetheless, I concur in the majority's judgment because the fire marshal's decisions under which the plaintiff rests her claim against the City of Chicago were discretionary and, therefore, immunity attaches under sections 2–109 and 2–201 of the Tort Immunity Act.

CHIEF JUSTICE FREEMAN joins in this special concurrence.

JUSTICE NICKELS, also specially concurring:

I agree that plaintiff's allegations of negligence describe discretionary acts of the fire marshal performed in the execution of governmental policy. Therefore, I agree with the majority's conclusion that the City is presumptively immune pursuant to the Tort Immunity Act. However, I do not agree with the majority's treatment of the special duty doctrine. I believe that the special duty doctrine should remain viable as a judicial exception to municipal immunity absent some legislative action abrogating the doctrine.

If we were writing upon a clean slate, I would be inclined to agree generally with the analysis presented in the majority opinion relating to the special duty doctrine. The special duty doctrine should have died as a means of evading municipal immunity with the passage of the Tort Immunity Act in 1965. As this court did not even acknowledge the doctrine until 1969 (see 
Huey v. Town of Cicero
, 41 Ill. 2d 361 (1968)), the special duty doctrine should have died before it was born. It did not. 

At this point, countless cases have applied the special duty doctrine for a period of over 30 years, and it has become engrafted with the Tort Immunity Act. Unlike the majority, I am also compelled to acknowledge that this court has already considered arguments relating to the questionable validity of the doctrine and pronounced that the legislature is the appropriate body to bring about any abrupt change in such long-standing public policy relating to municipal immunity.

At its heart, the special duty doctrine is a means of establishing a duty where at common law none would exist under the public duty rule. At common law, municipalities in Illinois owed no duty to the public to supply police or fire protection. 
Santy v. Bresee
, 129 Ill. App. 3d 658, 661 (1984). This “public duty” rule prevented a plaintiff's recovery for negli­gence. 
Porter v. City of Urbana
, 88 Ill. App. 3d 443, 445 (1980). The purpose of the public duty rule is clear: municipalities must not be held as insurers for every crime or fire that may occur in areas under municipal control.

The majority is correct to point out that the special duty doctrine operates as an exception to the public duty rule. The special duty doctrine was a recognition that, under certain circumstances, a municipality may impliedly undertake a duty to protect a specific individual from harm. Courts have created a four-part test to determine whether to apply negligence principles to municipal services: (1) the municipality must be uniquely aware of the particular danger or risk to which plaintiff is exposed; (2) there must be specific acts or omis­sions on the part of the municipality; (3) the specific acts must be affirmative or willful in nature; and (4) the injury must occur while the plaintiff is under the direct and immediate control of municipal employees or agents. 
Burdinie v. Village of Glendale Heights
, 139 Ill. 2d 501, 507 (1990). This court has further interpreted the control element to require that “the public employee initiates the cir­cumstances which create the dangerous situation.” 
Burdinie
, 139 Ill. 2d at 525-26.

The special duty doctrine did not merely serve to create a duty. Where shown, the existence of a special duty also constituted an exception to municipal immunity. This court abolished the common law doctrine of sovereign immunity for municipal corporations in 
Molitor
 v. Kaneland Community Unit District No. 302
, 18 Ill. 2d 11 (1959). As the majority points out, the 1970 Constitution confirmed 
Molitor
 and expressly left the issue of governmental immunities to the General Assembly. Ill. Const. 1970, art. XIII, §4. Illinois courts, however, continued to apply the special duty doctrine as an exception to the statutory Tort Immunity Act. Since 1970, scores of cases have applied the special duty doctrine as a viable exception to municipal immunity. See 
Calloway v. Kinkelaar
, 168 Ill. 2d 312, 339 n.1 (1995) (Freeman, J., specially concurring) (collecting cases).

With this history, we do not write upon a clean slate. Unlike the majority, I am reluctant to erase all that has been written without some reasonable impetus for change. I would also note that this court has only recently again acknowledged the continued viability of the special duty doctrine as an exception to the immunities granted in the Tort Immunity Act. In 
Burdinie v. Village of Glendale Heights
, 139 Ill. 2d 501, 511 (1990), this court stated:

“We further recognize that Illinois courts have discussed the special duty exception to the 
defenses and immunities provided under the Tort Immunity Act
 in cases decided both before and after the ratification of the present Illinois Constitution.” (Emphasis added.)

The court in 
Burdinie
 went on to examine the four prongs of the special duty doctrine, refusing to relax the requirements for evading the immunities granted by the Tort Immunity Act. The court concluded that:

“the constitutional provision which expressly grants the General Assembly control over municipal immunity convinces us that the legislature is the appropriate body to alter 
any existing exception
 
to municipal tort immunity as contained in the Tort Immunity Act
.” (Emphasis added.) 
Burdinie
, 136 Ill. 2d at 520. 

Thus, this court in 
Burdinie
 already determined that the consistent application of the special duty doctrine in so many cases over so many years should not be judicially brushed aside. Despite the questionable genesis of the special duty doctrine, I consider the majority's reversal in this regard to be an affront to principles of 
stare decisis
. In addition, the legislature has apparently acquiesced in the continued application of the special duty doctrine by failing to take up this court's invitation to address it through the legislative process. See 
Charles v. Seigfried
, 165 Ill. 2d 482, 492 (1995). 

In passing, I also question the logic supporting the majority's conclusion that it was the Constitution of 1970 which constituted the death knell of the special duty exception to municipal immunity. In 1965, the General Assembly enacted the first comprehensive version of the Local Governmental and Governmental Employees Immunity Act. Thus, the legislature acted to immunize municipalities and their agents prior to the ratification of the 1970 Constitution, and its provision abrogating sovereign immunity. Presumably, the special duty doctrine should have died as a means of evading municipal immunity with the passage of the Tort Immunity Act in 1965; the ratification of the 1970 Constitution is irrelevant.

In closing, I question why the majority need reach the issue of the constitutionality of the special duty doctrine in this case at all. It is well settled that a court should avoid constitutional issues where they are not necessary to the disposition and the case can be decided on nonconstitutional grounds. 
In re S.G.
, 175 Ill. 2d 471, 479 (1997). Plaintiff cannot establish a special duty as a matter of law because the fire marshal was not uniquely aware of the danger from the design of the door. In fact, even accepting the allegations in plaintiff's complaint, it would appear that the fire marshal was completely oblivious to the nature of the risk of harm in ordering the plaintiff to stand near the door. I would reject application of the special duty doctrine on this basis alone. For this reason, I concur in the judgment of the majority dismissing plaintiff's complaint.

JUSTICE McMORROW, concurring in part and dissenting in part:

I concur in the opinion of my colleagues in all but one respect: I do not agree with the majority's conclusion that willful and wanton governmental misconduct cannot deprive a municipality of an immunity granted by section 2–201 of the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (745 ILCS 10/2–201 (West 1994)). 

The majority again holds that governmental willful and wanton misconduct is immunized from liability unless the statutory immunity provision contains an express exemption for such willful and wanton conduct. As set forth more fully in my separate opinions in 
Barnett v. Zion Park District
, 171 Ill. 2d 378, 399 (1996) (McMorrow, J., dissenting), and 
In re Chicago Flood Litigation
, 176 Ill. 2d 179, 213 (1997) (McMorrow, J., concurring in part and dissenting in part), there are cogent reasons why the rationale underlying grants of governmental immunity for simple negligence should not be impliedly expanded to reach willful and wanton or intentional misconduct. Traditionally, public entities were granted immunities not enjoyed by private entities on the basis that significant expense and burdens may be placed upon the government when lawsuits against public entities are permitted without restriction. In my view, if the evidence shows that the public entity engaged in conduct showing an utter indifference to, or conscious disregard of, the safety of others, then the public entity is not immunized from liability for its willful and wanton misconduct.  I continue to adhere to the view that if the Tort Immunity Act is silent on the question of whether governmental willful and wanton misconduct is exempt from immunity, it should not be assumed that such legislative silence translates into a positive or unambiguous intent to grant unconditional immunity.

For the reasons stated, I concur in part and dissent in part from the opinion of the majority.

JUSTICE HARRISON, dissenting:

The majority's discussion of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1–101 
et seq.
 (West 1994)) is telling in its omission of an important and well-established principle. Because the Act is in derogation of common law, it must be strictly construed against the local public entity or public employee. 
Aikens v. Morris
, 145 Ill. 2d 273, 278 (1991); 
Snyder v. Curran Township
, 167 Ill. 2d 466, 477 (1995). By ignoring this principle, my colleagues are able to invest section 2–201 with a meaning so broad as to encompass nearly every official decision made by a municipal employee whose responsibilities include the determination of policy. The General Assembly never intended to confer such blanket immunity, and such immunity is not necessary in order to protect public entities from liability arising from “the operation of government,” which is the purpose of the Tort Immunity Act (745 ILCS 10/1–101.1(a) (West 1994)).

Deciding to conduct fire drills, establishing when fire drills should be scheduled, formulating guidelines for how fire drills should be carried out, these can all legitimately be regarded as involving matters of City policy. Simply telling a person to stand in a particular place on a particular day when a drill is being carried out, as the marshal is alleged to have done here, cannot. The marshal's instructions to plaintiff, and his attendant failure to give warnings or provide adequate alternate routes, involved nothing more than the exercise of discretion in implementing the City's fire drill policy. That is not enough to invoke section 2–201's immunity. As the majority itself correctly recognizes, there must be both an exercise of discretion and a determination of policy. Slip op. at 5.

Because plaintiff's injury cannot be said to have resulted from the fire marshal's act or omission in determining policy, the appellate court was correct in concluding that section 2–201 does not immunize the City from liability for the fire marshal's actions. I would therefore affirm the appellate court's judgment reversing the dismissal of count II.

The absence of section 2–201 immunity also means that we should review the sufficiency of count III of plaintiff's complaint, which seeks recovery based on willful and wanton conduct. Contrary to the appellate court, I believe that the facts alleged in plaintiff's complaint would, if true, establish that the fire marshal's actions exhibited a reckless disregard for the safety of others. The appellate court's judgment affirming the dismissal of count III should therefore be reversed.

Without section 2–201 immunity, there is no need to address the special duty doctrine. Because the majority has discussed it at some length, however, I feel that some comment is necessary.

Those who have followed this court's recent pronouncements on the doctrine will quickly see that the majority's discussion today presents a break with how the special duty question has been viewed. Although it gives no attribution, the majority's analysis appears to be derived from Justice Bilandic's dissenting opinion in 
Leone v. City of Chicago
, 156 Ill. 2d 33 (1993). In that dissent, Justice Bilandic postulated that the special duty doctrine was not, in fact, an exception to the statutory immunities set forth in the Tort Immunity Act. 
Leone
, 156 Ill. 2d at 47-48 (Bilandic, J., dissenting). Until today, however, the law in Illinois was to the contrary. The rule was that where the special duty doctrine applied, it enabled a plaintiff to escape the statutory immunities granted by the General Assembly to municipalities and their employees. 
Doe v. Calumet City
, 161 Ill. 2d 374, 390 (1994).

In 
Burdinie v. Village of Glendale Heights
, 139 Ill. 2d 501, 507 (1990), this court held that “the tort liability of a municipality *** is expressly controlled by constitutional provision and legislative prerogative as embodied in the Tort Immunity Act.” I continue to adhere to that view. Accordingly, I am in complete agreement with the proposition that under section 4 of article XIII of our state's constitution, it is the function of the General Assembly and not the courts to define when and under what circumstances sovereign immunity applies.

This construction of the law does not, however, command the conclusion that the special duty exception has been supplanted by statute. To the contrary, I believe that the General Assembly has recognized the continued viability of the doctrine and understands it as having been incorporated into the statutory scheme contained in the Tort Immunity Act.

The special duty exception to sovereign immunity is a well-established doctrine that has been consistently recognized by our court and by the appellate court in the decades following promulgation of the Tort Immunity Act and the subsequent ratification of the Illinois Constitution of 1970. Most of the decisions of our court discussing the exception have been cited earlier in this disposition or by the majority. The appellate court cases invoking the doctrine are too numerous to cite.

The General Assembly is presumed to know the construction the courts have placed upon a statute (
In re May 1991 Will County Grand Jury
, 152 Ill. 2d 381, 388 (1992)) and is therefore presumed to know of the courts' continued recognition of the special duty doctrine as an exception to the immunities set forth in the Tort Immunity Act. If the General Assembly believed that the special duty exception was inconsistent with the Act and constituted an improper encroachment upon its authority for defining the terms of sovereign immunity, it could have revised the statute to abolish the doctrine. It has not done so. The Tort Immunity Act has been amended on several occasions since it was originally enacted (see, 
e.g.
, 745 ILCS 10/2–202, Historical & Statutory Notes, at 806 (Smith-Hurd 1993); 745 ILCS 10/2–210, Historical & Statutory Notes, at 199 (Smith-Hurd Supp. 1997); 745 ILCS 10/4–105, Historical & Statutory Notes, at 868 (Smith-Hurd 1993)), but none of those amendments have limited or altered the special duty exception in any way.

Under these circumstances, I believe that the General Assembly has acquiesced in the view that the statutory immunities set forth in the Tort Immunity Act remain subject to the special duty exception. See 
Charles v. Seigfried
, 165 Ill. 2d 482, 492 (1995). The courts' explication of the law has, in effect, become part of the statute. 
People v. Drakeford
, 139 Ill. 2d 206, 215 (1990). For us to depart from that position is tantamount to amending the statute. The power to make such amendments, however, lies with the legislature, not the courts. 
Independent Voters v. Illinois Commerce Comm'n
, 117 Ill. 2d 90, 100 (1987). The majority is therefore wrong to abruptly overrule the decades of precedent on the subject. As Justice Nickels aptly observes in his special concurrence, the majority's actions are an affront to principles of 
stare decisis
. But then, what is new? 
People v. Burgess
, 176 Ill. 2d 289, 324-26 (1997) (Harrison, J., dissenting).

Finally, I note that there is some unintentional irony in the majority's decision. In treating the fire marshal's bad judgment as a matter of municipal policy, the majority no doubt hopes to further its agenda of protecting the government from liability. Its decision may, however, have just the opposite effect. By adopting an expansive definition of what constitutes municipal policy, the majority's opinion may inadvertently have just made it easier for plaintiffs to proceed against municipalities under 42 U.S.C. §1983 (1982), to which state immunity statutes, including the Tort Immunity Act, provide no defense (see 
Weiss v. Village of Downers Grove
, 225 Ill. App. 3d 466, 469 (1992); 
Anderson v. Village of Forest Park
, 238 Ill. App. 3d 83, 92 (1992)).

Under 42 U.S.C. §1983 (1982), municipal liability for constitutional violations is conditioned on a showing that the violations were caused by an official policy, custom or usage of the municipality. 
Doe v. Calumet City
, 161 Ill. 2d at 401-02. Establishing that a constitutional violation resulted from official policy has historically been one of the most serious obstacles confronting plaintiffs seeking to recover from municipalities under the statute. With today's broadened definition of what constitutes official policy, that hurdle has been lowered substantially. While that will not aid the plaintiff in this case, who has claimed no constitutional violation, I can see that it may be of considerable usefulness to others in cases to come.

FOOTNOTES
1:
The City has not addressed sections 5–102 and 5–103(b) in its current arguments before this court.