2018 IL App (1st) 170336

FIRST DISTRICT
FIRST DIVISION
November 5, 2018

No. 1-17-0336

| | |
|---|---|
| BECKY ANDREWS, as Plenary Guardian of JEFFREY ANDREWS, a Disabled Person, and BECKY ANDREWS, Individually, | ) Appeal from the Circuit Court of Cook ) County ) |
| Plaintiffs-Appellants, | ) ) ) |
| v. | ) Nos. 12 L 48 & 12 L 64 (cons.) ) |
| METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, | ) ) ) Honorable William E. Gomolinski |
| Defendant-Appellee. | ) Judge Presiding. |

JUSTICE GRIFFIN delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Pierce concurred in the judgment and opinion.

**OPINION**

¶ 1    This case concerns a construction accident at a project owned and operated by defendant the Metropolitan Water Reclamation District of Greater Chicago. The trial court dismissed plaintiff's claims for willful and wanton misconduct on the basis that no suit may be maintained for willful and wanton conduct without allegations that a similar prior injury occurred because of the condition from which the injury resulted. The trial court later entered summary judgment against plaintiff on her claims that defendant was negligent, finding that defendant, a public entity, is immune from suit under the circumstances. We reverse and remand for further proceedings.

¶ 2                              I. BACKGROUND

¶ 3    Jeffrey Andrews, whose interests are represented here by plaintiff Becky Andrews, worked as a cement finisher and was employed by F.H. Paschen, S.N. Nielson and Associates, LLC (Paschen). Defendant, the Metropolitan Water Reclamation District of Greater Chicago, was embarking on a project at 400 East 130th Street in Chicago. A joint venture was formed titled F.H. Paschen, S.N. Nielson/IHC Construction Joint Venture (Joint Venture), that entered into a contract with defendant to be the contractor to construct "primary settling tanks and grit removal facilities."

¶ 4    During the course of the project, Andrews was assigned to apply a sealant at the bottom of a 29-foot effluent chamber of a settling tank. In order to reach the bottom of the chamber, Andrews and a coworker were required to use a ladder made by the construction crew for a portion of the descent. Then, Andrews and the coworker would have to pivot onto a commercially manufactured fiberglass ladder for the remainder of the descent. There was not a horizontal access platform for transferring between the two ladders, the workers were just expected to step over from one ladder to the other. The process had been used several times to reach the bottom of other tanks on this particular construction project.

¶ 5    The project site experienced heavy rain prior to the subject instance when Andrews was expected to use the ladders to apply the sealant at the bottom of a chamber. The site was muddy and the chamber had approximately three feet of standing water in it. Andrews had to wear boots. On that occasion, while Andrews tried to pivot from the job-made ladder to the fiberglass one, he fell 29 feet down the chamber and landed on his coworker who had already descended. Andrews suffered broken bones and severe, career-ending head injuries.

¶ 6    The work at the project was governed by the Metropolitan Water Reclamation District of Greater Chicago: General Specifications (General Specifications), among other rules and

regulations. Plaintiff points to provisions in the General Specifications and elsewhere that she claims dictated the means and methods of the work and contained safety provisions from which defendant could not deviate. Plaintiff alleges that the dangerous ladder configuration—along with the failure to maintain a safe, dry work site—violated the project's governing documents and other applicable rules and regulations and constituted negligence on behalf of defendant.

¶ 7    Plaintiff's theory of negligence relies on the alleged acts and omissions by defendant's engineer on the project, Greg Florek. The General Specifications delegated construction safety to the Joint Venture, but gave defendant's engineer some degree of control regarding how the work was carried out, including that he enforce the General Specifications. Although defendant had no role in envisioning or creating the ladder configuration, there is a question whether, prior to Andrews's injury, defendant was aware of the workers using that ladder configuration.

¶ 8    Plaintiff, Andrews's wife, filed this case for construction negligence, loss of consortium for that negligence, willful and wanton construction negligence, and loss of consortium for that willful and wanton construction negligence. The trial court dismissed the willful and wanton claims on the basis that plaintiff could not establish that defendant had knowledge of prior injuries resulting from the allegedly unsafe ladder configuration. The trial court later entered summary judgment for defendant on plaintiff's claims based on simple negligence, holding that defendant could not be liable for Florek's alleged acts and omissions because Florek acted with discretionary authority and was making policy determinations. Based on defendant's conclusion that it was exercising discretion, it argues that it is entitled to discretionary immunity under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 *et seq.* (West 2016); see *id.* § 2-201).

¶ 9                              II. ANALYSIS

¶ 10    The trial court dismissed plaintiff's claims based on willful and wanton conduct under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2016)). A section 2-615 motion to dismiss attacks the sufficiency of a complaint and raises the question of whether a complaint states a cause of action upon which relief can be granted. *Id.*; *Fox v. Seiden*, 382 Ill. App. 3d 288, 294 (2008). All well-pleaded facts must be taken as true, and any inferences should be drawn in favor of the nonmovant. *Jones v. Brown-Marino*, 2017 IL App (1st) 152852, ¶ 19. A section 2-615 motion to dismiss should not be granted unless no set of facts could be proved that would entitle the plaintiff to relief. *Id.* We review the dismissal of a plaintiff's claims *de novo*. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55.

¶ 11    The Tort Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2016)) states that a local public entity that supervises an activity on public property is not liable for an injury unless the local public entity is guilty of willful and wanton conduct in its supervision proximately causing such injury. *Id.* § 3-108(a). For purposes of the Tort Immunity Act, the General Assembly has defined " '[w]illful and wanton conduct' " as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." *Id.* § 1-210. Whether a defendant's conduct is willful and wanton, for purposes of the Tort Immunity Act, is a question for the jury. *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 27.

¶ 12    Plaintiff argues that the trial court erred when it dismissed her willful and wanton supervision claims. Plaintiff contends that she sufficiently alleged that defendant manifested a conscious disregard for the safety of Jeffrey Andrews when it should have known about the dangerous ladder configuration and failed to enforce the rules and regulations to prevent injury,

despite the agreed requirement that defendant enforce the subject safety rules and General Specifications for the project.

¶ 13    The trial court's dismissal was based on its interpretation of the Tort Immunity Act and case law interpreting that Act. The trial court stated on the record its belief that the willful and wanton supervision claim could not stand, absent some type of allegation that the defendant has prior knowledge of a similar injury arising from the condition (citing *Floyd v. Rockford Park District*, 355 Ill. App. 3d 695 (2005)).

¶ 14    In *Floyd*, the court held that "[p]rior knowledge of similar acts is required to establish a 'course of action' " in order for a public entity to be liable for willful and wanton supervision. *Id.* at 701. The *Floyd* court further held that "even if there was prior knowledge of a similar injury, a plaintiff must plead facts establishing the similarities between the prior injury and the plaintiff's injury." *Id.* at 702. Here, the trial court stated that plaintiff's claim could not stand because "you've got no prior acts; you've got no prior injuries."

¶ 15    We disagree with the trial court's reasoning that similar prior injuries are always required for willful and wanton supervision claims to survive against a public entity. The arguments presented, and the trial court's ruling, were based solely on the willful and wanton exception to the Tort Immunity Act (745 ILCS 10/3-108 (West 2016)). The Illinois Supreme Court recently explained that "[t]o establish willful and wanton conduct *in the absence of evidence of prior injuries*, Illinois courts have required, at minimum, some evidence that the activity is generally associated with a risk of serious injuries." (Emphasis added.) *Barr v. Cunningham*, 2017 IL 120751, ¶ 21. Our supreme court has made it clear that willful and wanton misconduct in supervision can lead to a viable claim "in the absence of evidence of prior injuries," so dismissing plaintiff's claims on that basis alone is contrary to prevailing law.

¶ 16   Here, plaintiff claims that defendant should have known that the improper ladder configuration was being used and knew or had reason to believe that a serious injury could occur as a result of using the ladder configuration—which violated safety rules, regulations, and standard practices. Specifically, plaintiff alleges that defendant knew using tee-peed ladders over a 29-foot hole without the required access platform was dangerous. According to plaintiff, defendant did not employ competent supervision over the project, as it was required to do, to stop such activity, even though the ladder configuration arguably violated rules and regulations and defendant's own safety rules and General Specifications that defendant was obligated to enforce. See *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 246 (2007) (failure to supervise a known dangerous activity and follow safety rules and administrative guidelines can give rise to a cause of action for willful and wanton supervision); *Hadley v. Witt Unit School District 66*, 123 Ill. App. 3d 19, 23 (1984) (supervisor's failure to act in the face of a dangerous situation could constitute actionable willful and wanton misconduct).

¶ 17   Whether conduct is willful and wanton is ultimately a question of fact for the jury. *Cohen*, 2017 IL 121800, ¶ 27. This case was at the pleading stage when plaintiff's claims premised on willful and wanton supervision were eliminated. Plaintiff may be able to demonstrate that the workers were engaged in "an obviously dangerous activity" or she might "introduce evidence of *** particular dangers associated" with the subject activity. See *Barr*, 2017 IL 120751, ¶ 23; see also *Murray*, 224 Ill. 2d at 246. Plaintiff's allegations were sufficient to defeat the motion to dismiss. Plaintiff might be able to prove that defendant acted with utter indifference or conscious disregard for Andrews's safety when it observed or should have observed an activity it knew to be dangerous, knew or should have known that injury could result, and failed to act in face of the danger.

¶ 18    As for plaintiff's claims based on simple negligence, the trial court entered summary judgment against plaintiff under section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2016)). Summary judgment is appropriate when the pleadings, depositions, admissions and affidavits, viewed in a light most favorable to the nonmovant, fail to establish that a genuine issue of material fact exists, thereby entitling the moving party to judgment as a matter of law. *Id.*; *Fox v. Seiden*, 2016 IL App (1st) 141984, ¶ 12. We review a trial court's decision to grant summary judgment *de novo. Illinois Tool Works Inc. v. Travelers Casualty & Surety Co.*, 2015 IL App (1st) 132350, ¶ 8.

¶ 19    Plaintiff argues that the trial court erred when it entered summary judgment on her negligence claims by finding that defendant's engineer, Greg Florek, had exercised discretionary authority. The Tort Immunity Act states that a local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable. 745 ILCS 10/2-109 (West 2016). The Tort Immunity Act also states that "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." *Id.* § 2-201. The trial court found that "decisions made by [Florek] concerning safety issues on the construction site involved balancing competing interests and judgment calls as to what safety measures were needed." The trial court held that summary judgment was proper here because "engineer Florek acted with discretionary authority in supervising the construction project and his decisions were determinations of policy."

¶ 20    An employee may qualify for discretionary immunity if he holds either a position involving the determination of policy or a position involving the exercise of discretion. *Cabrera v. ESI Consultants, Ltd.*, 2015 IL App (1st) 140933, ¶ 122. However, an employee who qualifies

for discretionary immunity based on his responsibilities must also have engaged in both the determination of policy and the exercise of discretion when performing the act or omission from which the plaintiff's injury resulted. *Id.* The statute is concerned with both the type of position held by the employee and the type of action performed or omitted by the employee. *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 341 (1998). Whether the act or omission in question is discretionary or ministerial must be determined on a case-by-case basis. *Cabrera*, 2015 IL App (1st) 140933, ¶ 122.

¶ 21   In this case, even if Florek was in a position where he was entitled to make determinations of policy and exercise discretion, there is no evidence that he was making policy or exercising discretion with respect to the act or injury from which Andrews's injury resulted. To the contrary, Florek testified and defendant has remained steadfast throughout the case that Florek did not know about the ladder configuration. Policy determinations, as contemplated by the Tort Immunity Act, are the decisions that " 'require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests.' " *Harinek*, 181 Ill. 2d at 342 (quoting *West v. Kirkham*, 147 Ill. 2d 1, 11 (1992)). Defendant's position is that Florek knew nothing of the ladder configuration and therefore could not have balanced any interests or exercised judgment about its use.

¶ 22   The Illinois Supreme Court recently addressed the application of discretionary immunity under similar circumstances in *Monson v. City of Danville*, 2018 IL 122486. In *Monson*, the plaintiff alleged that she was injured when she tripped and fell on an uneven sidewalk that the city-defendant was negligent in maintaining. *Id.* ¶¶ 1, 32. The city argued that it was immune from liability because the director of public works had recently undertaken to inspect the city's sidewalks as part of a project to make repairs. *Id.* ¶¶ 4-5, 32. The director of public works

8

testified that he made repair decisions on a case-by-case basis by walking along the sidewalks, inspecting them, and determining what areas were in need of repair. *Id.* He testified that although he did not specifically remember the piece of concrete that allegedly caused the plaintiff's fall, his staff inspected every portion of sidewalk in that area so he must have inspected it and used his discretion to determine that the particular portion of sidewalk did not need to be repaired. *Id.* ¶¶ 5-6.

¶ 23     Our supreme court held that the city-defendant in *Monson* was not immune from liability. *Id.* ¶ 39. The court reasoned that the city's immunity argument must fail because the city did not present "evidence documenting the decision not to repair the particular section of sidewalk at issue in this case." *Id.* ¶ 35. This case is no different in that respect. Contrary to presenting evidence that he was aware of the condition giving rise to the injury and disregarded it, defendant has strenuously objected to any insinuation that it had any knowledge of the configuration being utilized. Under *Monson*, the impetus is on defendant to "present sufficient evidence that it made a conscious decision not to perform the repair." *Id.* ¶ 33. "The failure to do so is fatal to the claim [of immunity]." *Id.*

¶ 24     Defendant has not shown that its alleged failure was an exercise of discretion because there is no evidence that it was aware of or made the decision to implement its goal of sealing the tanks. It presented no evidence at all documenting any decision or refusal to decide whether to use the ladder configuration that resulted in Andrews being injured—there was no decision-making process at all. Like in *Monson*, the record contained "no evidence of the City's decision-making process with respect to the specific site of plaintiff's accident." *Id.* ¶ 38. There were "no facts regarding the City's assessment of the actual site." *Id.* Plaintiff did not present any evidence regarding "whether anyone even took note of a sidewalk deviation (or ladder configuration) at

that location, or whether it was simply overlooked." *Id.* In this case, defendant claims it knew nothing about the procedures being used, and thus, the record before us does not contain sufficient evidence to establish that defendant's handling of the matter constituted an exercise of discretion. See *id.*

¶ 25    Defendant points to some earlier appellate court cases, examining what constitutes a discretionary act and policy determination, where we found that a municipality was entitled to immunity. See, *e.g.*, *Wrobel v. City of Chicago*, 318 Ill. App. 3d 390, 395 (2000) (city was immune from liability because its laborers tasked with filling potholes were required to determine the manner in which to fill them and how to allocate their time and resources); *Harinek*, 181 Ill. 2d at 342-43 (a fire marshal assembling a group of people during a fire drill was undertaking a discretionary act because the marshal had to plan and conduct the drill and also balance various other interests competing for the time and resources of the department); *Cabrera*, 2015 IL App (1st) 140933, ¶ 125 (city was immune from liability from claims by a construction worker that fell from a city bridge while working on a construction project because the city's supervision of the worker's employer was discretionary).

¶ 26    In *Wrobel*, the city was alleged to have been negligent because it knew about the pothole, but unreasonably repaired it. *Wrobel*, 318 Ill. App. 3d at 393, 395. In *Harinek*, the fire marshal was alleged to have been negligent in conducting a fire drill that was "carried out pursuant to a plan developed by the marshal before the drill began." *Harinek*, 181 Ill. 2d at 342. The situation in both of those cases is readily distinguishable from this case when *Monson* is applied because the defendant in those cases knew of the injurious condition and took measures in relation to that condition. Here, we have a defendant claiming ignorance of the condition giving rise to the injury altogether.

¶ 27    *Cabrera*, on the other hand, is more difficult to square with the facts of this case, in light of the supreme court's decision in *Monson*. In *Cabrera*, a construction worker was injured when he fell into a pit while working to paint a bridge in Chicago. *Cabrera*, 2015 IL App (1st) 140933, ¶¶ 1, 18. The project was governed by documents similar to those that governed the work in this case, such as that safety responsibilities were delegated to the contractors, with the city providing oversight and having a duty to ensure the work was being done according to the contracts. *Id.* ¶¶ 34, 42, 46. When the plaintiff fell, the city and its agents had no notice of the putatively dangerous condition that gave rise to the injury. *Id.* ¶¶ 46, 55. We held that the city was immune from liability in tort because the contract governing the project gave the city the right to " 'reject or require modification of any proposed or previously approved order of procedure, method, structure or equipment.' " *Id.* ¶ 125. We held that, "[b]ecause of this contractual provision, the City's supervision of Era Valdivia was discretionary, meaning the City is immune pursuant to section 2-201." *Id.*

¶ 28    After *Monson*, the immunity analysis done in *Cabrera* is untenable. Simply having the right under the construction contracts to reject methods the contractors might use does not amount to automatic discretionary immunity for any injury resulting from any methods used in the construction. Instead, courts are required to look at the specific act or omission and decide whether the defendant was "engaged in both the determination of policy and the exercise of discretion *when performing the act or omission from which the plaintiff's injury resulted*." (Emphasis added and emphases omitted.) *Id.* ¶ 122. Here, the act or omission from which plaintiff's injury is alleged to have resulted is defendant allowing the workers to repeatedly use an unsafe ladder configuration. Defendant claims it knew nothing about the utilization of that method. Thus, defendant has not met its evidentiary burden of showing that it exercised

11

discretion when allowing the workers to use the putatively unsafe method. See *Monson*, 2018 IL 122486, ¶¶ 31, 34. Just because a party has a right to exercise discretion does not mean that it did exercise discretion.

¶ 29    Plaintiff also argues that she was denied equal protection of the laws by virtue of Jeffrey Andrews, a construction worker, being subjected to a more stringent standard for recovery under the Tort Immunity Act (745 ILCS 10/2-201 (West 2016)). Plaintiff maintains that the application of *Cabrera*, 2015 IL App (1st) 140933, and *In re Chicago Flood Litigation*, 176 Ill. 2d 179 (1997), to the Tort Immunity Act makes it unreasonably difficult for a construction injury victim such as Jeffrey Andrews to defeat tort immunity as compared to someone injured in a nonconstruction capacity. Plaintiff argues that the court in those cases and the trial court here failed to scrutinize Florek's actions on the job site and only focused on his position as supervisor and the documents governing the project, ignoring the second prong of the *Harinek* analysis. See *Harinek*, 181 Ill. 2d at 341 (the immunity statute "is concerned with both *the type of position* held by the employee and *the type of action* performed or omitted by the employee" (emphasis in original)).

¶ 30    The guarantee of equal protection requires that the government treat similarly situated individuals in a similar manner. *American Federation of State, County, & Municipal Employees (AFSCME), Council 31 v. State*, 2015 IL App (1st) 133454, ¶ 30. We need not resolve plaintiff's equal protection argument in light of our reversal on other grounds.

¶ 31                                    III. CONCLUSION

¶ 32    Accordingly, we reverse and we remand for further proceedings.

¶ 33    Reversed and remanded.