# Illinois Official Reports

## Appellate Court

---

**Brooks v. Daley**, 2015 IL App (1st) 140392

---

| | |
|---|---|
| Appellate Court Caption | JOHN W. BROOKS, Plaintiff-Appellant, v. RICHARD M. DALEY and RAYMOND OROZCO, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-14-0392 |
| Filed | March 18, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-1895; the Hon. James O'Hara, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Holman & Stefanowicz, LLC, of Chicago (Brian R. Holman, Dennis H. Stefanowicz, Jr., and Tara Beth Davis, of counsel), for appellant.<br><br>Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Kerrie Maloney Laytin, Assistant Corporation Counsel, of counsel), for appellees. |
| Panel | JUSTICE MASON delivered the judgment of the court, with opinion.<br>Presiding Justice Pucinski and Justice Hyman concurred in the judgment and opinion. |

**OPINION**

¶ 1     Plaintiff John Brooks, the former fire commissioner of the city of Chicago, brought this suit against defendants Richard Daley, the former mayor of the city of Chicago, and Raymond Orozco, Daley's former chief of staff, seeking damages in connection with Brooks' resignation as fire commissioner in 2010. Brooks alleged that ever since he was appointed as fire commissioner in 2008, Daley wanted to oust Brooks and replace him with Daley's preferred candidate for the position. To that end, when a fire department employee made allegations of sexual harassment against Brooks in 2010, defendants allegedly forced Brooks to resign before an official investigation could clear Brooks' name. Brooks sought damages for intentional infliction of emotional distress and tortious interference with an advantageous business relationship.

¶ 2     The trial court dismissed Brooks' complaint, finding that defendants were immune from suit under section 2-201 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-201 (West 2012)), which immunizes public employees "serving in a position involving the determination of policy or the exercise of discretion" for their actions "in determining policy when acting in the exercise of such discretion." Brooks appeals, arguing that immunity does not apply where defendants' actions were unauthorized and outside the scope of their employment. Finding no error, we affirm.

¶ 3                       BACKGROUND

¶ 4     The trial court dismissed Brooks' original and amended complaints with leave to replead. At issue in this appeal is Brooks' second amended complaint, which the trial court dismissed with prejudice.

¶ 5     According to the second amended complaint, Brooks started work with the Chicago fire department in 1980 and rose through the ranks over time to become first deputy fire commissioner. In July 2008, the position of fire commissioner became vacant. Daley, who was then mayor of Chicago, was faced with the task of recommending a new fire commissioner. The complaint alleges that, as the first deputy fire commissioner, Brooks was the expected and likely candidate to take over the position, and it would have been "politically incorrect" for Daley not to recommend Brooks for the position. Brooks was allegedly advised by Orozco that Daley wanted to recommend another individual, Robert Hoff, instead of Brooks, but Orozco convinced Daley to change his mind based upon the "severe political backlash" that would follow such a recommendation. Thus, in July 2008, Daley recommended that Brooks be appointed to the position of fire commissioner. This recommendation had to be and was approved by the city council. The complaint concedes that as fire commissioner, Brooks was an at-will employee.

¶ 6     According to the complaint, Orozco warned Brooks that he needed to watch himself and conduct himself appropriately at all times, because Daley would be looking for any possible reason to remove him and replace him with Hoff. Brooks heeded this warning and alleged that he performed his duties "in a professional and outstanding manner, never receiving any negative comments about his performance as Fire Commissioner and never providing [Daley] any basis to seek his removal."

¶ 7        In March 2010, a female fire department employee raised allegations of sexual harassment against Brooks. Orozco allegedly informed Brooks that he was being placed on paid administrative leave pending an investigation. Meanwhile, pursuant to the city's sexual harassment policy, the city hired an outside law firm to conduct an independent investigation into the allegations.

¶ 8        The complaint alleges that, on April 30, 2010, while the investigation was ongoing, Orozco called Brooks and demanded that Brooks meet him at Orozco's office. Orozco also allegedly advised Brooks to bring an undated letter of resignation with him. The meeting took place the following day. At the meeting, Brooks allegedly asked Orozco why Daley wanted him out, and Orozco cited the allegations of sexual harassment against him. Brooks stated that the allegations were untrue, but Orozco allegedly said, "I warned you that Mayor Daley would use anything to get you out of the fire commissioner office. *** It doesn't matter to Mayor Daley if the allegations are true, he just wants you out." Orozco also informed Brooks that if he did not submit a letter of resignation, he would be either terminated immediately or demoted to battalion chief and then demoted, either of which would have an adverse effect on Brooks' pension and would "destroy his name and reputation in the industry." The complaint states that Brooks did not wish to resign, but he was coerced into doing so by Orozco. He provided an undated letter of resignation to Orozco "against his free-will."

¶ 9        The complaint further states that on May 28, 2010, Orozco advised Brooks that his resignation from the position of fire commissioner became effective as of that date. The city publicly announced that Brooks resigned as fire commissioner amidst allegations of sexual harassment, and the resulting news coverage had an adverse effect on Brooks' good name. On August 6, 2010, the independent investigation concluded that the sexual harassment allegations against Brooks were "completely false and fabricated." However, according to the complaint, this exoneration could not reverse the effects of the earlier negative publicity. Brooks' firefighting career was allegedly "destroyed" both within the Chicago fire department and with any other fire department.

¶ 10        Brooks' complaint seeks relief in two counts. In count I, Brooks seeks damages for tortious interference with an advantageous business relationship. He alleges that he had an expectation of continued employment with the city of Chicago and defendants interfered with this expectation by forcing him to resign. Brooks further asserts that Daley did not have the authority to terminate him, obtain his forced resignation, or otherwise punish him for the allegations of sexual harassment until the investigation had concluded. Nevertheless, defendants allegedly used their apparent authority "to terminate the Plaintiff, [and] to force the resignation of the Plaintiff." In count II, intentional infliction of emotional distress, Brooks alleges that defendants' actions were extreme and outrageous and caused him mental anguish, emotional distress, humiliation, and pain and suffering. With regard to both counts, Brooks states that both Daley and Orozco are being sued "in [their] individual capacity."

¶ 11        Defendants moved to dismiss Brooks' complaint under section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2012)), arguing, in relevant part, that they were immune from suit under section 2-201 of the Tort Immunity Act (745 ILCS 10/2-201 (West 2012)). The trial court granted defendants' motion in an order dated January 24, 2014. Brooks now appeals.

ANALYSIS

Section 2-201 of the Tort Immunity Act provides as follows: "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201 (West 2012). Immunity under this section depends both on the type of position held by the employee and the type of action performed by the employee. *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 341 (1998). For an employee to enjoy immunity under this section, the employee's position must be one "involving the determination of policy *or* the exercise of discretion" (emphasis added) (745 ILCS 10/2-201 (West 2012)). Additionally, the employee's allegedly tortious action must result from both a determination of policy and an exercise of discretion. *Id.*; see *Harinek*, 181 Ill. 2d at 341; *Albers v. Breen*, 346 Ill. App. 3d 799, 808 (2004). Immunity under section 2-201 is granted only if both of these two prongs are satisfied. *Harinek*, 181 Ill. 2d at 341. In this appeal, Brooks argues that the defendants' act of forcing his resignation fails to meet either prong.

In their motion to dismiss, defendants invoked section 2-619(a)(9) of the Code of Civil Procedure, which admits all well-pleaded facts in the complaint (*Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008)) but asserts that the complaint is barred by "affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2012); see *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 115 (2008) (immunity from suit under the Tort Immunity Act is "affirmative matter" properly raised under section 2-619(a)(9)). In this case, defendants did not attach any affidavits or other evidentiary materials to their motion; accordingly, dismissal is only proper if the "affirmative matter" at issue is apparent from the face of the complaint. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 377 (2003). We review a section 2-619 dismissal *de novo*. *Smith*, 231 Ill. 2d at 115.

### A. The Defendants' Positions

Brooks first contends that neither Daley, the mayor of Chicago, nor Orozco, Daley's chief of staff, qualifies as a "public employee serving in a position involving the determination of policy or the exercise of discretion" (745 ILCS 10/2-201 (West 2012)) for purposes of this action. We disagree.

For purposes of determining immunity under section 2-201, policy determinations are decisions that require a governmental employee " 'to balance competing interests and to make a judgment call as to what solution will best serve each of those interests.' " *Harinek*, 181 Ill. 2d at 342 (quoting *West v. Kirkham*, 147 Ill. 2d 1, 11 (1992)). Discretionary acts "involve the exercise of personal deliberation and judgment in deciding whether to perform a particular act, or how and in what manner that act should be performed." *Wrobel v. City of Chicago*, 318 Ill. App. 3d 390, 395 (2000). Discretionary acts are partly defined in contrast to ministerial acts, " 'which a person performs on a given state of facts in a *prescribed manner, in obedience to the mandate of legal authority*, and without reference to the official's discretion as to the propriety of the act.' " (Emphasis in original.) *Van Meter*, 207 Ill. 2d at 371-72 (quoting *Snyder v. Curran Township*, 167 Ill. 2d 466, 474 (1995)).

Based upon these definitions, it is apparent from the face of the complaint that the mayor of Chicago and his chief of staff are public employees who serve in positions involving the determination of policy and the exercise of discretion, particularly in the selection or

termination of high-ranking city officials. The complaint describes both discretionary acts and policy decisions carried out by the defendants in their official capacity. For instance, when the position of fire commissioner originally became vacant in 2008, Daley had discretion in choosing whom to appoint to that position; in particular, he had to decide between Brooks and Hoff. It was not legally mandated that he choose one over the other, nor was there any preordained blueprint for his decision. See *id.* (contrasting ministerial acts with discretionary ones). Assisting Daley in his decision was Orozco, who, as Daley's chief of staff, was tasked with advising Daley regarding the appointment. Indeed, the complaint states that Orozco's "pleading and influence" was instrumental in convincing Daley to appoint Brooks rather than Hoff. It is therefore apparent that defendants exercised "personal deliberation and judgment" (*Wrobel*, 318 Ill. App. 3d at 395) in carrying out their jobs.

¶ 19    It is similarly apparent that defendants engaged in policy determinations, since they were both required to make judgment calls as to how to balance competing interests. See *Harinek*, 181 Ill. 2d at 342 (citing *West v. Kirkham*, 147 Ill. 2d at 11). In deciding whom to appoint as fire commissioner, Daley had to balance his own personal preference for Hoff with the fact that Brooks was the expected successor to the position and that a Hoff appointment could trigger "severe political backlash." As discussed in more detail below, defendants' decision to remove Brooks also involved a policy determination, and there is ample law to support the conclusion that hiring and firing decisions are considered policy determinations within the meaning of section 2-201. See *Johnson v. Mers*, 279 Ill. App. 3d 372, 380 (1996); *Ellis v. City of Chicago*, 272 F. Supp. 2d 729, 735 (N.D. Ill. 2003); *Hanania v. Loren-Maltese*, 319 F. Supp. 2d 814, 835-36 (N.D. Ill. 2004).

¶ 20    Brooks contends that, for purposes of this lawsuit, defendants were not "serving in *** position[s] involving the determination of policy or the exercise of discretion" (745 ILCS 10/2-201 (West 2012)), because the particular conduct giving rise to this lawsuit–*i.e.*, forcing his resignation–was purely self-interested and did not best serve the interests of defendants' employer, the city of Chicago. Brooks argues that this is sufficient to negate the first prong of the *Harinek* test. But Brooks' discussion of the circumstances of his resignation improperly conflates the two prongs of the section 2-201 analysis as described by our supreme court in *Harinek*, 181 Ill. 2d at 341. The first prong concerns the nature of the employee's position, while the second prong concerns the nature of the employee's actions that give rise to the lawsuit. *Id.* If the nature of the position could be determined solely based upon the particular act or omission giving rise to the lawsuit, then the two prongs would essentially collapse into a single inquiry. Such an interpretation would be incompatible with the plain language of the statute, which sets forth "serving in a position involving the determination of policy or the exercise of discretion" as a separate inquiry from whether the act or omission at issue is discretionary and a policy determination. 745 ILCS 10/2-201 (West 2012); see *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 26 ("Each word, clause and sentence of a statute must be given reasonable meaning, if possible, and should not be rendered superfluous."). Rather, the nature of the employee's position is determined by the duties performed in that position generally, irrespective of the specific acts or omissions which form the basis of the plaintiff's claim.

¶ 21    Brooks additionally argues that the conduct of the employee is what determines the nature of the position. In support, he cites *Wrobel*, 318 Ill. App. 3d at 395, where the court considered the tasks performed by highway maintenance workers in deciding whether they held positions

that required them to exercise discretion or determine policy. We agree that the employee's conduct is relevant in this regard, but we must consider the conduct of the employee generally, not just the specific acts upon which liability is premised. Nor does *Wrobel* purport to state a contrary conclusion. In this case, as discussed earlier, the complaint shows both Daley and Orozco engaging in conduct that involves the determination of policy and the exercise of discretion. Thus, defendants qualify as "public employee[s] serving in a position involving the determination of policy or the exercise of discretion." 745 ILCS 10/2-201 (West 2012).

¶ 22    Brooks' further argument that he is suing Daley and Orozco in their individual capacities is meaningless. Defendants had the ability to appoint and terminate city officials precisely by virtue of the public positions they held. The allegation that Daley wanted Brooks out as fire commissioner because he "personally" preferred to appoint another candidate does not transform an official discretionary act into one giving rise to personal liability.

¶ 23    Brooks' final argument on this point is that our interpretation of the statute turns the qualified immunity provided under section 2-201 into sovereign immunity, creating a state where "the king can do no wrong." We disagree. Even if the king (or, more pertinently, the mayor and his chief of staff) serves in a position involving the determination of policy or the exercise of discretion, he still would not be entitled to section 2-201 immunity unless he passes the second prong of the test, which requires consideration of the specific acts or omissions giving rise to the lawsuit. We turn now to that analysis.

¶ 24                          B. The Defendants' Actions

¶ 25    Brooks next contends that defendants' actions in forcing his resignation cannot be considered actions resulting from both a determination of policy and an exercise of discretion, as required for immunity under section 2-201. As discussed earlier, Brooks' complaint alleges that when Brooks was accused of sexual harassment by a coworker, the city initiated an independent investigation into the allegations, pursuant to the city's sexual harassment policy. Before the investigation concluded, Daley, per Orozco, informed Brooks that he would be fired if he did not submit a letter of resignation. In this way defendants coerced Brooks to resign.

¶ 26    Defendants argue that such conduct is immunized because cases establish that hiring and firing decisions are considered both determinations of policy and exercises of discretion. In *Johnson*, 279 Ill. App. 3d at 380, the court held that the defendant village was immune from a claim of negligent hiring, because "[t]he decision to hire or not to hire *** is an inherently discretionary act." The court explained that a hiring decision depends on many factors which an employer must consider and evaluate, rather than being made automatically when certain specific factors are present. *Id.* This same logic would apply equally to a firing decision, particularly in regard to an at-will employee like Brooks.

¶ 27    Although our research has not disclosed any Illinois cases that discuss whether a decision to terminate an employee is a discretionary policy determination within the meaning of section 2-201, federal courts applying Illinois law have consistently answered this question in the affirmative.[1] These federal decisions are not controlling, but their reasoning is persuasive

---

[1]Claims relating to alleged wrongful discharge under Illinois law are frequently brought in federal court because they are joined with causes of action under section 1983 of the Civil Rights Act of 1871 (42 U.S.C. § 1983 (2006)).

here. See *Pielet v. Pielet*, 2012 IL 112064, ¶ 39 (decisions from lower federal courts may be considered as persuasive authority); *Wilson v. County of Cook*, 2012 IL 112026, ¶ 30 (same).

¶ 28    In *Ellis*, 272 F. Supp. 2d at 735-36, the court relied upon this court's holding in *Johnson* in finding that the city of Chicago was immune from suit for its decision to fire an employee. The court explained that firing the employee was a policy decision because "a City official was required to make a decision concerning the effect disputes between its employees had on efficiency and harmony in the workplace." *Id.* at 735. It was also discretionary, since "the decision to fire someone involves balancing a set of given circumstances to arrive at an appropriate outcome; the outcome is not predetermined but left in the hands of an official to use proper judgment." *Id.* at 736; see also *Collins v. Board of Education of North Chicago Community Unit School District 187*, 792 F. Supp. 2d 992, 999 (N.D. Ill. 2011) (board had section 2-201 immunity for decision not to hire plaintiff, since hiring and firing decisions are "inherently discretionary" (internal quotation marks omitted)).

¶ 29    Similarly, in *Hanania*, 319 F. Supp. 2d at 835-36, the court held that the city of Cicero was immune from liability for firing its town collector. In reaching this result, the court made clear that there is no exception to section 2-201 immunity for actions performed with "corrupt or malicious motives." *Id.* at 836 (citing *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 493-94 (2001)); *cf. In re Chicago Flood Litigation*, 176 Ill. 2d 179, 196 (1997) (no exception to section 2-201 immunity for willful and wanton conduct).

¶ 30    Here, when Brooks was accused of sexual harassment, defendants made a decision concerning the effect that the allegations would have on efficiency and harmony in the workplace. Such a judgment call is both a policy determination and a discretionary action, since the outcome was not predetermined but left to defendants' judgment. *Ellis*, 272 F. Supp. 2d at 735-36. Nor would it matter if defendants acted with "corrupt and malicious motives" in seeking to remove Brooks from his position, since the plain language of section 2-201 does not contain any exception for such actions. *Hanania*, 319 F. Supp. 2d at 836.

¶ 31    Brooks argues that these cases are inapposite, because he was not fired by the defendants but, rather, forced to resign. This is a distinction without a difference. Forcing an employee to resign in light of a workplace dispute, just like firing him, involves the exercise of judgment as to the potential effects that the employee's presence or absence will have on workplace harmony. See *Ellis*, 272 F. Supp. 2d at 735. The employer's decisionmaking process is fundamentally the same in both cases. Moreover, we note that the concepts of firing and forced resignation are intertwined in this case, because defendants allegedly forced Brooks to resign by threatening to fire him if he refused. The entire premise underlying the defendants' threat was that they had decided to fire Brooks if he did not tender a letter of resignation to Orozco. Thus, defendants' actions in this case are analogous to a firing decision for purposes of our section 2-201 analysis.

¶ 32    Brooks next contends that defendants should not be immune from suit because the sexual harassment policy did not grant them authority to force his resignation while the investigation was still ongoing. But in his complaint, Brooks admits that he was an at-will employee. An at-will employee can be discharged by an employer at any time and for any reason, with limited exceptions not applicable here. *Interstate Scaffolding, Inc. v. Illinois Workers' Compensation Comm'n*, 236 Ill. 2d 132, 149 (2010); *Pietruszynski v. McClier Corp., Architects & Engineers, Inc.*, 338 Ill. App. 3d 58, 63 (2003). Furthermore, nothing in the city's sexual harassment policy, a copy of which is attached to Brooks' complaint, provides that an

at-will employee is protected from being fired for the duration of a sexual harassment investigation. On the contrary, the policy explicitly states that "no part of this Policy shall be construed to create contractual or other rights or expectations." See *R&B Kapital Development, LLC v. North Shore Community Bank & Trust Co.*, 358 Ill. App. 3d 912, 922 (2005) (a motion to dismiss does not admit allegations of the complaint if those allegations are contradicted by an exhibit attached to the complaint; in such a case, the exhibit controls). Thus, contrary to Brooks' assertions on appeal, it is apparent that defendants had no duty, contractual or otherwise, to retain Brooks until the investigation concluded. Given that defendants had authority to terminate Brooks, they could also validly threaten to terminate him unless he resigned from his position.

¶ 33    Brooks finally tries to reframe the issue by arguing that the conduct in question is not the defendants' decision to remove him from his position, but the actual act of forcing his resignation, which he asserts is merely ministerial. This parsing of defendants' conduct cannot withstand analysis. Even after defendants had decided to remove Brooks as fire commissioner, they still retained discretion as to how to carry out that decision; for instance, since Brooks was an at-will employee, they could have summarily fired him instead of giving him the option to resign and preserve his pension. See *Interstate Scaffolding*, 236 Ill. 2d at 149 (at-will employee can be discharged at any time). Brooks does not cite any ordinance or regulation which mandates a particular procedure for the mayor to remove an at-will employee. Rather, defendants would have had to determine the best way to remove Brooks based upon the competing interests at stake, such as avoiding political backlash for themselves and maintaining workplace harmony (see *Ellis*, 272 F. Supp. 2d at 735). Such an exercise of judgment is a policy determination within the meaning of section 2-201 (*Harinek*, 181 Ill. 2d at 341), regardless of defendants' motives. *Village of Bloomingdale*, 196 Ill. 2d at 495-96 (allegations that defendant village's actions were an " 'abuse of official process and power' " and a " 'corrupt and malicious misuse of power' " were irrelevant to question of immunity, since relevant immunity provision contained no reference to intent). To the extent that Brooks argues that the decision to force his resignation can be separated from the actual act of forcing his resignation, such that even if the former is discretionary, the latter is still ministerial, this argument lacks merit. Accepting this distinction would effectively eviscerate section 2-201, since every discretionary decision to perform an act is followed by the carrying out of that decision.

¶ 34    The cases Brooks cites do not require a contrary conclusion. In *Bonnell v. Regional Board of School Trustees*, 258 Ill. App. 3d 485 (1994), the purchaser of a school building sued the school board for breach of contract and tortious misrepresentation, alleging that the board concealed the presence of asbestos in the building. *Id.* at 486-87. The board argued that it was immune from suit, since its decision to sell the building was discretionary. *Id.* at 489. The court rejected this argument, finding that the act at issue was not the board's decision to sell the school but, rather, the act of carrying out the sale, which the board lacked discretion to do in anything but a legal manner. *Id.* at 490. This distinction follows from the fact that the *Bonnell* plaintiff was not complaining about being sold the building; he was complaining specifically about nondisclosure of a defect in the building which the board was obligated by law to disclose. In this case, there is no such distinction. Brooks' allegations about being forced to resign cannot be separated from the decision to force him to resign, as both inherently involve the exercise of discretion.

¶ 35    Brooks also cites *Snyder*, 167 Ill. 2d at 474-75, for the proposition that "although a governmental agency has discretion in determining whether to perform a public work or make an improvement, once the decision to perform the work is made, it must be done with reasonable care and in a nonnegligent manner." *Snyder* is inapposite, since Brooks is not claiming that defendants failed to exercise reasonable care in their manner of forcing his resignation; he argues that defendants should not have forced his resignation at all. Brooks' citations to *Robinson v. Washington Township*, 2012 IL App (3d) 110177, ¶¶ 12-14 (township was not immune from liability for failing to perform ministerial act of roadway repair in a reasonably safe manner), and *Trtanj v. City of Granite City*, 379 Ill. App. 3d 795 (2008) (city was not immune from liability for street department workers' alleged negligence in following procedures during a power outage), are similarly distinguishable.

¶ 36                                   CONCLUSION
¶ 37    The trial court did not err in finding that defendants were immune from suit under section 2-201 of the Tort Immunity Act, and the trial court's dismissal of Brooks' suit is therefore affirmed. Based on this finding, we need not reach defendants' contentions that the dismissal can be affirmed on other grounds. Because the decision to terminate Brooks cannot be separated from the manner in which the termination was effected, defendants' discretionary acts are entitled to immunity.

¶ 38    Affirmed.