# Illinois Official Reports

## Appellate Court

***American Family Mutual Insurance Co. v. Tyler***, 2016 IL App (1st) 153502

| | |
|---|---|
| Appellate Court Caption | AMERICAN FAMILY MUTUAL INSURANCE COMPANY, as Subrogee of Michael Gaffney, Plaintiff-Appellant, v. DAVID L. TYLER, THE CITY OF CHICAGO, and AIMAN R. OTHMAN, Defendants (The City of Chicago, Defendant-Appellee). |
| District & No. | First District, Second Division<br>Docket No. 1-15-3502 |
| Filed | November 22, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-M1-14555; the Hon. Jerry A. Esrig, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Arnett Law Group, LLC, of Chicago (Scott J. Larsen and Sean P. Farrell, of counsel), for appellant.<br><br>Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Susanne M. Loose, Assistant Corporation Counsel, of counsel), for appellee. |
| Panel | JUSTICE MASON delivered the judgment of the court, with opinion.<br>Justices Neville and Pierce concurred in the judgment and opinion. |

**OPINION**

¶ 1    American Family Mutual Insurance Company (American Family), as subrogee of its insured, Michael Gaffney, asserted claims against the City of Chicago (City) and others arising out of the theft by fraud and ultimate recovery of Gaffney's vehicle. The trial court dismissed American Family's complaint as it pertained to the City, on the ground that the City was immune from suit under the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/2-101 (West 2012)). We agree with the trial court and affirm.

¶ 2    On April 19, 2011, Gaffney agreed to sell his vehicle, a 2006 BMW 650i, to an individual named David Tyler. Tyler paid for the car with two cashier's checks written on Fifth Third Bank: one payable to the lienholder on the vehicle, BMW Financial Services Remarketing, Inc., and the other payable to TRKAM, LLC, a business owned by Gaffney that held title to the car. After receipt of the checks, Gaffney gave Tyler the keys to the car and on April 21, 2011, faxed Tyler a copy of the vehicle's registration.

¶ 3    The following day, Gaffney was informed by First Merit Bank, where he had deposited the check payable to TRKAM, LLC, that the check was counterfeit. Gaffney then contacted the Chicago police department to report his vehicle stolen and likewise advised American Family of the theft. His efforts to contact Tyler were unsuccessful.

¶ 4    On some later date unspecified in the record, Gaffney called the Chicago police department, presumably to determine if his vehicle had been recovered. Gaffney was informed that the car had been recovered, undamaged, and that the police had called the vehicle's "owner." When Gaffney indicated that he was the owner and had not received a call, he was referred to the eighteenth precinct. Gaffney went to the station and was told that the car had already been returned to the "owner."

¶ 5    Gaffney's car was ultimately recovered on January 4, 2012, during a routine traffic stop. At the time, the car was being driven by defendant Aiman Othman.

¶ 6    American Family filed suit on July 10, 2014. In its first amended complaint, in addition to claims against Tyler and Othman, American Family asserted a claim labeled "breach of bailment contract" against the City. American Family alleged that the City (i) "voluntarily received" Gaffney's vehicle, (ii) "intended to create a bailment, when it accepted and maintained exclusive control and possession" of the vehicle, and (iii) despite Gaffney's demand, failed to return to vehicle to its proper owner. American Family sought damages consisting of the amount it paid Gaffney for the loss ($11,670) as well as the amount of Gaffney's deductible ($1000).

¶ 7    The City filed a motion to dismiss the complaint in which it asserted that the gist of American Family's claim was the City's negligence in failing to provide "adequate police protection or service" or a failure to "prevent, detect or solve crimes"—conduct for which the City is immune under the Act. In response, American Family insisted that its claim against the City was a "bailment contract claim" excluded from the Act's scope under section 2-101, which preserves claims asserting a public entity's liability based on contract. 745 ILCS 10/2-101(a) (West 2012). The City denied that a bailment existed, given the lack of mutual assent between it and Gaffney and that, at most, the complaint asserted a constructive

bailment—a contract implied in law—which did not fall under the Act's exemption for contract claims.

¶ 8　　The trial court agreed that a fair reading of American Family's claim against the City asserted the existence of a quasi-contract or a contract implied in law, but concluded that under *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 500 (2001), the claim was not based on a "contract" for purposes of the Act's exemption for liability under a contract. The court concluded, therefore, that American Family's claim fell under the Act's immunity provisions and was barred. Following its ruling, given the pendency of claims against other defendants, the court entered a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), and this appeal followed.

¶ 9　　A motion pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)) "admits the legal sufficiency of the plaintiff's complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiff's claim." *Relf v. Shatayeva*, 2013 IL 114925, ¶ 20; *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). "Affirmative matter" includes any defense other than a negation of an essential allegation of plaintiff's cause of action. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993). A municipality's assertion that it is immune from suit is an appropriate subject of a motion under section 2-619. *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 115 (2008); *Brooks v. Daley*, 2015 IL App (1st) 140392, ¶ 14. We review the trial court's ruling on a section 2-619 motion *de novo*. *Smith*, 231 Ill. 2d at 115; *DeLuna*, 223 Ill. 2d at 59.

¶ 10　　The evolution of the Act was discussed by our supreme court in *Village of Bloomingdale*. In response to the judicial abolition of sovereign immunity, the legislature enacted the Act in 1965. *Village of Bloomingdale*, 196 Ill. 2d at 489. The Act reflects the general principle that governmental entities are liable in tort, but that liability is limited by an "extensive list" of immunities defined by specific government functions. *Id.* The Illinois Constitution of 1970 again abolished sovereign immunity, "[e]xcept as the General Assembly may provide by law." Ill. Const. 1970, art. XIII, § 4. "Today, therefore, the tort liability of a local public entity or employee is expressly controlled both by the constitutional provision and by legislative prerogative as embodied in the [Act]." *Village of Bloomingdale*, 196 Ill. 2d at 489.

¶ 11　　As noted, the Act preserves a public entity's contractual liability: "Nothing in this Act affects the liability, if any, of a local public entity or public employee, based on: a) Contract ***." 745 ILCS 10/2-101(a) (West 2012).

¶ 12　　American Family asserts here that its constructive bailment claim falls under the Act's exception for claims against governmental entities based on contract. Notwithstanding our supreme court's decision in *Village of Bloomingdale*, American Family, citing *American Ambassador Casualty Co. v. City of Chicago*, 205 Ill. App. 3d 879 (1990), contends that its constructive bailment claim is the type of claim for which the City can be sued under the Act because it is a liability imposed by contract, albeit a contract implied in law.

¶ 13　　We agree with the City that *Village of Bloomingdale* controls the analysis and that our supreme court's reasoning in that case effectively overruled *American Ambassador* on the issue of whether a constructive or quasi-contract falls within the Act's provision preserving contract claims against public entities. Although American Family's claim against the City is couched in terms of a breach of the duty of care (the City "had a duty to exercise a reasonable degree of care and caution in handling, storing and protecting [Gaffney's] vehicle") and thus would implicate a negligence/duty analysis, American Family expressly disavows any reliance

- 3 -

on a tort theory in support of its claim against the City. Therefore, we limit our analysis to the viability of American Family's constructive bailment claim.

¶ 14    In *American Ambassador*, an insurance company sued the City when its insured's vehicle, which had been impounded after the insured was arrested, was stolen from the impound lot. *Id.* at 881. The plaintiff alleged that the City accepted the vehicle and exercised exclusive control over it but failed to return the car to its owner. *Id.* at 882. The court recognized that "[a] bailment is the delivery of property for some purpose upon a contract, express or implied, that after the purpose has been fulfilled, the property shall be redelivered to the bailor, or otherwise dealt with according to his [or her] directions, or kept until he [or she] reclaims it. [Citation.]" *Id.* at 881. The elements of a bailment claim are (1) an express or implied agreement to establish a bailment, (2) delivery of the property in good condition, (3) the bailee's acceptance of the property, and (4) the bailee's failure to return the property or the bailee's redelivery of the property in a damaged condition. *Id.*

¶ 15    In its opinion, the court observed that "[a] constructive bailment, or a bailment implied in law, may be found where the property of one person is voluntarily received by another for some purpose other than that of obtaining ownership." *Id.* at 882. Where a bailment is implied in law, the holder or bailee is obligated to keep and preserve the property for the benefit of the owner notwithstanding the lack of any mutual assent to create a bailment. *Id.* at 882-83.

¶ 16    The City claimed that the plaintiff's claim sounded in negligence and was encompassed within the immunity afforded under the Act for the failure to provide adequate police protection or service or the failure to prevent the commission of crimes. *Id.* at 883. Rejecting this argument, the court found that the plaintiff's claim was not a tort claim but rather sounded in contract and fell within the Act's exemption for claims based on contract: "Nothing in the language of the Tort Immunity Act provides local public entities or public employees immunity from suit for breach of contract or the failure to return bailed property in good condition." *Id.* at 884. Finding that the insurance company's quasi-contract bailment claim fell outside the immunity provided the City under the Act, the *American Ambassador* court reversed a judgment in favor of the City. *Id.* at 885.

¶ 17    In *Village of Bloomingdale*, our supreme court addressed whether a quasi-contract claim qualifies as a claim asserting a public entity's liability "based on contract" and thus is excepted from the immunity granted under the Act. In *Village of Bloomingdale*, a developer acquired several parcels of land and petitioned the village to annex the land and rezone it for residential use. 196 Ill. 2d at 486. The petition was ultimately denied, and the village sued the developer for breach of contract based on the developer's refusal to pay for services rendered by the village in connection with the petition. *Id.* The developer counterclaimed, raising as one of its theories of recovery the alleged existence of a quasi-contract by which the village agreed, in exchange for the developer's payment of a fee, to process its petition reasonably and in good faith, which it failed to do. *Id.* at 488.

¶ 18    The court gave short shrift to the developer's argument. Citing *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 334 (1977), the court noted that a quasi-contract "exists independent of any agreement or consent of the parties" and that because it is an obligation imposed by law, a quasi-contract is " 'no contract at all,' but a 'rule of law that requires restitution to the plaintiff of something that came into the defendant's hands but in justice belongs to the plaintiff.' D. Dobbs, Dobbs Law of Remedies § 4.2(3), at 580 (2d ed. 1993)." *Village of Bloomingdale*, 196 Ill. 2d at 500. Thus, the court determined that a quasi-contract is

not a "contract" for purposes of section 2-101(a)'s preservation of municipal liability for breach of contract. *Id.* at 500-01.

¶ 19   American Family attempts to distinguish *Village of Bloomingdale* based on the type of quasi-contract claim asserted in that case—a breach of the duty to act in good faith—compared to its constructive bailment claim. But like the quasi-contract claim in *Village of Bloomingdale*, the constructive bailment claim here is based on "no contract at all," and thus American Family cannot avail itself of the Act's exception for a municipality's liability for breach of contract.

¶ 20   That *Village of Bloomingdale* did not mention or expressly overrule *American Ambassador* is of no moment. The reasoning of the supreme court's decision dooms American Family's quasi-contract claim, no matter what facts or theories underlie that claim; there was no more a contract between the City and Gaffney regarding his vehicle than there was between the developer and the village in *Village of Bloomingdale*. We are certainly not at liberty to disregard *Village of Bloomingdale* given its expansive reasoning. *Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546, 551 (1983) (" 'It is fundamental that appellate courts are without authority to overrule the supreme court or to modify its decisions.' " (quoting *Beagley v. Andel*, 58 Ill. App. 3d 588, 591 (1978))); *Gatreaux v. DKW Enterprises, LLC*, 2011 IL App (1st) 103482, ¶ 23 (same); *People v. Muhammad*, 398 Ill. App. 3d 1013, 1017 (2010) (same). We, therefore, affirm the judgment of the circuit court of Cook County.

¶ 21   In its reply brief, American Family raises a new argument based on its claim that the release of Gaffney's vehicle was a ministerial, rather than discretionary, act. This argument, raised neither in the trial court nor in American Family's opening brief, has been forfeited, and we will not consider it further. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (points not argued in appellant's opening brief "are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing").

¶ 22   Affirmed.