**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200469-U

Order filed November 15, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| GORDON M. GANTZERT, CHRISTINE J. GANTZERT, MICHAEL HOMERDING, and JEFF HOMERDING, | ) ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, Grundy County, Illinois. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0469 Circuit No. 19-CH-79 |
| MAZON TOWNSHIP ROAD DISTRICT and ED WALKER, in his official capacity as Mazon Township Road Commissioner, | ) ) ) ) | |
| Defendants-Appellees. | ) ) | Honorable Lance R. Peterson, Judge, Presiding. |

JUSTICE SCHMIDT delivered the judgment of the court.
Justices Lytton and Wright concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court erred when it dismissed plaintiffs' complaint by finding plaintiffs' claims barred under the Tort Immunity Act.

¶ 2     Plaintiffs, Gordon M. Gantzert, Christine J. Gantzert, Michael Homerding, and Jeff Homerding, appeal the trial court's dismissal of their complaint against defendants, Mazon Township Road District and Mazon Township Road Commissioner Ed Walker. The trial court

found that defendants established their affirmative defense of immunity pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1 *et seq.* (West 2018)) for damages resulting from certain improvements defendants made to roadways along plaintiffs' property. We reverse and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4         Plaintiffs' first amended complaint and request for injunction is the subject of this appeal. The complaint alleged the following. Plaintiffs Gordon and Christine Gantzert owned property located near the intersection of Tynan Road and Reed Road in Grundy County, Illinois. The Gantzerts lease the right to farm the property to Michael and Jeff Homerding. The flooding of the land decreased the farmland's rent rate. Plaintiffs alleged that defendants caused the flooding by making the following improvements to Reed Road, Higgins Road, and Tynan Road:

> "a.    In the Fall of 2010, the Defendant, Mazon Township Road District, replaced a culvert under Tynan Road at Reed Road.
>
> b.    In the Fall of 2010, the Defendant graded the South roadside ditch of Reed Road to alleviate ponding that was occurring in the North half of the Northwest quarter of Section 13 Township 32 North, Range 7 East, Third Principal Meridian Mazon Township.
>
> c.    In the Fall of 2013, the Defendant graded and deepened the South roadside ditch of Reed Road, east of Higgins Road.
>
> d.    In the Fall of 2013, the Defendant raised the road pavement of Reed Road east of Higgins Road."

After these improvements were made, plaintiffs suffered recurring flooding on their land.

- 2 -

¶ 5    According to the complaint, on January 31, 2019, plaintiffs commissioned an engineering and surveyor firm, Berns, Clancy and Associates, to investigate the drainage conditions. A copy of the Berns, Clancy and Associates' report is attached to the complaint. The report indicated that the natural flow of water in the northeast quarter of section 14 in Mazon Township is to the northeast. The natural flow of water in the northeast quarter of section 13 in Mazon Township is also to the northeast. Core samples taken from Reed Road showed that the surface of the road had been raised between 8 and 10 inches from its height prior to the improvement. Berns, Clancy and Associates determined that the improvements made by defendants to Reed Road caused a diversion of stormwater from Sections 13 and 14. The diverted stormwaters now run east, instead of northeast, which results in unnatural accumulations of large amounts of water on plaintiffs' property. Berns, Clancy and Associates reviewed the records of improvements approved by the Illinois Department of Transportation (IDOT) for a period of 20 years and did not find any records showing improvements to Reed Road that had been approved by IDOT. It also reviewed the records of improvements approved by the Grundy County Engineer for a period of 20 years and did not find any records showing improvements to Reed Road that had been approved by the Grundy County Engineer.

¶ 6    The complaint pursued three theories for relief. Count I alleged negligent construction. Count I referenced the Illinois Drainage Code which provided, "Land may be drained in the general course of natural drainage by either open or covered drains." Plaintiffs alleged defendants were negligent by changing the natural flow of water and causing flooding on plaintiffs' land. Plaintiffs claimed that defendants acted willfully and wantonly by failing to ensure that the improvements met or complied with IDOT standards of construction and all applicable laws and regulations. Count II alleged a claim of trespass based on the diversion of water, which caused an unnatural

accumulation of water on plaintiffs' property. Count III sought a preliminary and permanent injunction requiring defendants to make corrections to the roads to prevent the unnatural accumulation of water on plaintiffs' property.

¶ 7        Defendants filed a combined section 2-615 and section 2-619 motion to dismiss plaintiffs' complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2619.1 (West 2018)). The section 2-619 portion of that motion is the subject of this appeal. The motion argued that plaintiffs' claims against defendants were barred by an affirmative matter. Defendants claimed they were immune from legal liability for the improvements to Reed Road under section 2-201 of the Tort Immunity Act (745 ILCS 10/2-201 (West 2018)). Because defendants made improvements to Reed Road as part of their official duties and made the discretionary decision to make such improvements, defendants claimed that section 2-201 provided absolute immunity against plaintiffs' claims.

¶ 8        Defendants attached the affidavit of Ed Walker to their motion. Walker's affidavit provided the following information. As Mazon Township Road District Commissioner, he was responsible for maintaining, repairing, widening, and improving Mazon Road District roads, including the roadway surface, the shoulders, and the drainage ditches and culverts. In 2010, Walker observed that water from excessive rainstorms was causing flooding to and along Reed Road, which created a hazard for the public using the road and affecting the roadway surface and shoulders and drainage ditches.  As a result of the flooding causing excessive water on the roadway surface and shoulders of Tynan Road, Reed Road, and Higgins Road, Walker "made a decision in [his] official capacity as Mazon Township Road District Commissioner that in [his] judgment that it served at [*sic*] interests of the public using [Reed] Road to take the following action to solve the problem." In 2010, Walker replaced the old culvert under Tynan Road and Reed Road to alleviate the flooding.

Walker noted that plaintiffs alleged he graded the drainage ditch on the southside of Reed Road in 2010, graded and deepened the south drainage ditch on Reed Road east of Higgins Road in 2013, and raised the Reed Road roadway surface in 2013. Walker had no records of making those additional improvements. Walker claimed that the only improvement he made to Reed Road was the culvert replacement in 2010.

¶ 9        Walker further averred that in his capacity as the commissioner, he "made a policy decision to make an improvement to Reed Road at or near Tynan Road due to excessive rainfall making Reed Road at certain locations dangerous for the traveling public using Reed Road." The improvement made in 2010 was a policy decision he made by "balancing competing interests of the danger to the public, erosion of the roadway, shoulder and ditches, costs, safety and availability of materials and equipment to do so." Further, Walker "made a conscious decision to make this improvement as the best solution to the flooding problems considering safety for the public, erosion to the road, shoulders and ditches and how best and when best to do so."

¶ 10        Plaintiffs filed a response to the motion to dismiss. Plaintiffs reiterated that defendants violated the Illinois Drainage Code. According to plaintiffs, defendants violated the Illinois Drainage Code by changing the natural course of drainage along Reed Road. Plaintiffs also contended that defendants violated IDOT standards and regulations for the use of Motor Fuel Tax Funds (MFT). According to plaintiffs, defendants violated these statutes and regulations by "fail[ing] to present the necessary maps, showing grade separations, plans and specifications to the County Engineer and [IDOT] for approval." Had defendants followed these procedures, plaintiffs argued that defendants "would not have been allowed to proceed in the manner in which they did. Specifically, the County Engineer and [IDOT] would not have approved the grade increase without requiring that Defendants address the interruption in the course of natural drainage."

¶ 11 As to the claim of immunity, plaintiffs argued that defendants' failure to comply with the Illinois Drainage Code and IDOT rules and regulations show that Walker did not make a discretionary policy decision to make the improvements to Reed Road. Therefore, by failing to comply, Walker did not make a discretionary policy decision that would be protected by section 2-201. Plaintiffs did not argue that their allegation of willful and wanton conduct satisfied any exception to the immunity provided by section 2-201.

¶ 12 Plaintiffs attached several documents to their response to defendants' motion to dismiss. Included are records of IDOT MFT allotment and transactions for Grundy County over a period of 2012, 2013, 2014, 2015, 2017, 2018, and 2020. These transactions show that money was transferred to Mazon Township but did not show what the money was used for. Also included is a 2017 document titled, "Motor Fuel Tax Funds Source, Distribution & Uses for Road District 2017." The manual includes a paragraph stating:

> "The expenditure of MFT funds requires the approval and supervision of the Department of Transportation. A highway commissioner desiring to use MFT funds for a road improvement shall complete a Statement of Proposed Road Improvement *** and submit it to the county engineer. The county engineer, in cooperation with the highway commissioner, will prepare the plans, specifications, and estimates and submit them to the Department for approval."

¶ 13 Also attached to the response is the affidavit of plaintiff, Gordon Gantzert. His affidavit averred that he observed defendants replacing the culvert under Tynan Road at Reed Road in 2011. In 2011, he also observed defendants grading the south roadside ditch of Reed Road. In September

2012, Gordon sent a report from Agri-Tile, Inc., to defendants, which stated that Reed Road was obstructing the natural course of water. In 2014, Gordon observed defendants grading and deepening the south roadside ditch of Reed Road and also raising the road pavement of Reed Road. Finally, Gordon averred defendants violated policy by failing to submit materials to IDOT and the Grundy County Engineering Department prior to making improvements to the roads.[1]

¶ 14    The trial court denied defendants' motion to dismiss pursuant to section 2-615. The court found the complaint sufficiently alleged a claim of negligence. However, the court granted defendants' motion to dismiss pursuant to section 2-619. Specifically, the court found that defendants were immune from liability pursuant to the Tort Immunity Act. Plaintiffs filed a motion to reconsider, which the court denied.

¶ 15                              II. ANALYSIS

¶ 16    On appeal, plaintiffs contend the trial court erred when it granted defendants' motion to dismiss pursuant to section 2-619(a)(9). Section 2-619(a)(9) of the Code allows involuntary dismissal of a plaintiff's claim where the claim is "barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2018). Immunity from suit under the Tort Immunity Act is an affirmative matter properly raised under section 2-619(a)(9). *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 378 (1995). The "affirmative matter" asserted by a defendant must be apparent on the face of the complaint; otherwise, the motion must be supported by affidavits or certain other evidentiary materials. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997); *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). The plaintiff then must come forward with a counteraffidavit refuting the

_____

[1]We note that there is a discrepancy in Gantzert's affidavit and the amended complaint regarding the years that defendants allegedly made the improvements to the roads.

evidentiary facts in the defendant's affidavit, or else those facts will be deemed admitted. *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116. Our review is *de novo*. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 378 (2003).

¶ 17    Plaintiffs argue defendants failed to satisfy their burden in establishing immunity from liability for discretionary decisions under section 2-201 of the Tort Immunity Act. Section 2-201 of the Tort Immunity Act (745 ILCS 10/2-201 (West 2018)) provides, "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." *Id.* § 2-109.

¶ 18    Under section 2-201, a municipality and its officials can claim immunity against injuries caused by an official's actions that are "both a determination of policy and an exercise of discretion." *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466, 472 (2001). Section 2-201 immunity is absolute, covering both negligent and willful and wanton conduct. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 195-96 (1997). A defendant claiming immunity under this section must prove its employee held either a position involving the determination of policy or a position involving the exercise of discretion. *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 341 (1998). In addition, the defendant must establish that the act or omission giving rise to the injuries was both a determination of policy and an exercise of discretion. *Id.*

¶ 19    Policy determinations are defined as " ' "those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each

- 8 -

of those interests." ' " *Monson v. City of Danville*, 2018 IL 122486, ¶ 30 (quoting *Harinek*, 181 Ill. 2d at 342, quoting *West v. Kirkham*, 147 Ill. 2d 1, 11 (1992)). "Discretionary decisions are 'unique to a particular public office' [citation] and 'involve the exercise of personal deliberation and judgment in deciding whether to perform a particular act, or how and in what manner that act should be performed.' " *Id.* (quoting *Wrobel v. City of Chicago*, 318 Ill. App. 3d 390, 394-95 (2000)).

¶ 20    "In contrast to discretionary and policy decisions, a public entity's ministerial acts are not immune from liability under the [Tort Immunity] Act." *Id.* Consequently, the negligent performance of ministerial acts can subject a municipality to tort liability. *Id.* "Ministerial acts are 'those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act.' " *Id.* (quoting *Snyder*, 167 Ill. 2d 466, 474 (1995)).

¶ 21    In this case, plaintiffs' amended complaint alleged Walker made the following improvements that caused flooding on their property: (1) replaced a culvert under Tynan Road at Reed Road in 2010; (2) graded the southside drainage ditch of Reed Road in 2010; (3) graded and widened the southside drainage ditch of Reed Road in 2013; and (4) raised the road pavement on Reed Road in 2013.

¶ 22    Walker's decision to make repairs and improvements to the roads is unique to his position in that a highway commissioner has the duty to "[c]onstruct, maintain and repair and be responsible for the construction, maintenance and repair of roads within the district, let contracts, employ labor and purchase material and machinery therefor, subject to the limitations provided in this Code." 605 ILCS 5/6-201.7 (West 2018). Walker's unrebutted affidavit provided that in 2010, he noticed flooding on the surface of Reed Road. This flooding created a hazard for the public traveling on

the road. He made the conscious decision to replace the culvert in 2010 to alleviate the flooding on the road. Thus, defendants established the first element of immunity by showing that Walker made a policy decision when replacing the culvert in 2010.

¶ 23      However, we note plaintiffs also alleged that defendants graded the southside drainage ditch of Reed Road in 2010, graded and widened the southside drainage ditch of Reed Road in 2013, and raised the road pavement on Reed Road in 2013. Walker's affidavit only explained the replacement of the culvert in 2010. He did not have any records showing that he made these three additional improvements. Consequently, the record in this case contains no evidence of defendants' decision-making process as to the three additional improvements. The facts necessary to sustain defendants' immunity defense are not apparent on the face of the complaint, nor were they supported by affidavit or other evidentiary materials of record. See *Monson*, 2018 IL 122486, ¶¶ 32-35; *Van Meter*, 207 Ill. 2d at 380. Thus, defendants failed to establish that Walker made a policy decision with respect to the remaining alleged improvements.

¶ 24      Our analysis does not end there. We also find there exists a question of fact as to whether Walker made a discretionary decision. Plaintiffs claim defendants were mandated by law to comply with IDOT and MFT regulations. For support, plaintiffs relied on the statutes and regulations governing the use of MFT funds. One statute provides that MFT funds may be used for "[m]aintenance of any township or district road as defined in Section 2-103 or any grade separation constructed as provided in Section 6-701.1, *subject to the approval of the county superintendent of highways and the Department*." (Emphasis added.) 605 ILCS 5/6-701.2 (West 2018). Plaintiffs also quoted from the 2017 IDOT manual titled, "Motor Fuel Tax Funds Source, Distribution & Uses for Road District 2017." This manual provides:

"The expenditure of MFT funds *requires the approval and supervision* of the Department of Transportation. A highway commissioner desiring to use MFT funds for a road improvement shall complete a Statement of Proposed Road Improvement *** and submit it to the county engineer. The county engineer, in cooperation with the highway commissioner, will prepare the plans, specifications, and estimates and *submit them to the Department for approval*." (Emphases added.)

Plaintiffs allege that Walker used MFT funds to finance the improvements to the roads in question but failed to follow these procedures by submitting the appropriate documents to the county engineer and to IDOT for approval. Given that Walker must first receive approval from other authorities, plaintiffs argue that Walker did not have discretion to make the improvements in question.

¶ 25    We agree with plaintiffs. Walker did not have discretion to ignore IDOT and MFT regulations. If defendants used MFT funds, then IDOT and MFT regulations mandate the acts Walker must perform before beginning road maintenance, repair, and improvement projects. While Walker maintained discretion to determine which roads required repairs or maintenance, he lacked discretion to begin those projects without first complying with IDOT and MFT regulations. It is possible that the result would have been different had Walker followed these regulations. IDOT could have rejected Walker's request and, instead, required him to make the improvements according to IDOT's instruction. Given that Walker required IDOT's approval before beginning the improvements, those decisions are not discretionary. Consequently, if defendants used MFT

funds and failed to comply with IDOT regulations, those acts would not be shielded from liability under section 2-201 of the Tort Immunity Act

¶ 26   Defendants never addressed whether MFT funds financed the improvements in question. However, plaintiffs presented MFT disbursement records, which show the township received the money. Plaintiffs also offered Gantzert's affidavit and the Berns, Clancy and Associates' report, which both made an allegation that defendants used MFT funds. Berns, Clancy and Associates reviewed the records of improvements approved by IDOT for a period of 20 years and did not find any records showing improvements to Reed Road that had been approved by IDOT. It also reviewed the records of improvements approved by the Grundy County Engineer for a period of 20 years and did not find any records showing improvements to Reed Road that had been approved by the Grundy County Engineer. Whenever it would be reasonably defensible to draw an inference in the plaintiffs' favor from the well-pleaded facts, we draw that inference. *Hanks v. Colter*, 2011 IL App (1st) 101088, ¶ 17. In light of this, there exists a question of fact as to whether defendants used MFT money to perform the improvements in question and whether defendants complied with IDOT regulations.

¶ 27   In reaching this conclusion, we reject defendants' reliance on *Pleasant Hill Cemetery Ass'n v. Morefield*, 2013 IL App (4th) 120645. *Pleasant Hill* is similar in that plaintiff filed a complaint against defendant (a highway commissioner) for altering the surface flow of water. The trial court found defendant immune under section 2-201 of the Tort Immunity Act and dismissed the complaint. The appellate court affirmed. Although *Pleasant Hill* is factually similar, that decision never considered whether defendant's conduct violated IDOT regulations and the use of MFT funds. It is legally distinguishable on this basis.

- 12 -

¶ 28       We also reject defendants' argument that the complaint should be dismissed for failing to plead a statutory violation as required by Illinois Supreme Court Rule 133(a). Rule 133(a) requires that "[i]f a breach of statutory duty is alleged, the statute shall be cited in connection with the allegation." *Id.* Defendants contend that the complaint failed to provide a specific citation to a statutory duty that defendants breached. Thus, defendants assert the complaint should be dismissed on this basis. Defendants' argument conflates the standards used in deciding a section 2-619 motion to dismiss and a section 2-615 motion to dismiss. Our analysis is based on the standard in section 2-619. That standard admits the legal sufficiency of the complaint, admits all well-pleaded facts and reasonable inferences from those well-pleaded facts, and asserts an affirmative matter outside the complaint that defeats the cause of action. *Reynolds v. Jimmy John's Enterprises*, LLC, 2013 IL App (4th) 120139, ¶ 31. As applied here, defendants' section 2-619 motion admitted the legal sufficiency of the breach of statutory duty. Any argument regarding the sufficiency of the allegations of the breach of statutory duty is beyond the scope of a section 2-619 motion.

¶ 29       Further, the trial court denied defendants' section 2-615 motion on this basis. We agree with the trial court. The complaint and pleadings in this case sufficiently alleged a breach of statutory duty. The complaint alleged that defendants breached the Illinois Drainage Code and IDOT regulations. Plaintiffs specified the alleged breaches of these statutory duties in response to defendants' motion to dismiss. Specifically, plaintiffs alleged that defendants failed to comply with the rules governing the use of MFT funds. This allegation included a specific citation to the statutes at issue. The purpose of the pleading requirement is to apprise the opposing party of the claims against them. See *Kyles v. Maryville Academy*, 359 Ill. App. 3d 423, 435-36 (2005). The pleadings in this case sufficiently put defendants on notice that plaintiffs sought relief for defendants' alleged failure to comply with IDOT regulations.

¶ 30    In light of our conclusion, we need not address plaintiffs' alternative argument that defendants are not immune for their willful and wanton conduct under section 2-202 of the Tort Immunity Act.

¶ 31                                    III. CONCLUSION

¶ 32    For the foregoing reasons, reverse and remand the judgment of the circuit court of Grundy County.

¶ 33    Reversed and remanded.